**THIS VERSION OF THE OPINION INCLUDES THE MARCH 16, 2011, ERRATA**

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 07-2349

ARNOLD C. KYHN, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided January 18, 2011)

*John S. Berry* and *Chad J. Wythers*, both of Lincoln, Nebraska, were on the brief for the appellant.

*John H. Thompson*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Richard Mayerick,* Deputy Assistant General Counsel; and *James B. Cowden*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, MOORMAN and SCHOELEN, *Judges*.

PER CURIAM: Veteran Arnold C. Kyhn appeals, through counsel, a May 17, 2007, decision of the Board of Veterans' Appeals (Board) that denied his claim for VA service connection for tinnitus. Record (R.) at 1-12. Mr. Kyhn argues that (1) the Board failed to ensure compliance with its January 2006 remand instructions by failing to provide him with a VA audiological examination in violation of *Stegall v. West*, 11 Vet.App. 268, 270-71 (1998); (2) VA failed to provide him notice of his scheduled audiological examination; (3) the Board erred by improperly discounting evidence favorable to his tinnitus claim; and (4) the Board failed to provide an adequate statement of reasons or bases for its decision. The Secretary argues for affirmance of the May 2007 Board decision, asserting that (1) VA complied with the January 2006 Board remand instructions because the

evidence of record demonstrates that a VA audiological examination was scheduled; (2) the presumption of regularity attaches to the notice of the examination and Mr. Kyhn has failed to rebut that presumption; and (3) the Board properly denied service connection because Mr. Kyhn failed to attend his scheduled VA examination.

In an opinion issued on January 15, 2010, the Court affirmed the Board decision. On February 5, 2010, the appellant moved for reconsideration or, in the alternative, full-Court consideration. *Kyhn v. Shinseki*, 23 Vet.App. 335 (2010). The panel ordered the parties to submit supplemental memoranda. After review of these memoranda, the parties' other briefs, and the record, the Court's January 15, 2010, opinion is withdrawn and this opinion is issued in its place. For the reasons set forth below, the Court will affirm the May 17, 2007, Board decision.

## I. BACKGROUND

Mr. Kyhn served honorably in the U.S. Army from May 1945 to October 1946. R. at 17. In February 1998, he claimed service connection for hearing loss, which a VA regional office (RO) denied as not well grounded. R. at 87-89. In May 1999, Mr. Kyhn submitted a Notice of Disagreement (NOD) along with medical evidence from a private audiologist, Craig A. Foss, who opined that Mr. Kyhn had "bilateral moderate to severe high frequency sensorineural hearing loss with decreased auditory discrimination." R. at 96. Mr. Foss attributed this hearing loss to Mr. Kyhn's military service. R. at 96-97. In his NOD, Mr. Kyhn also stated that he was seeking service connection for tinnitus. R. at 96. In July 1999, the RO issued a Statement of the Case (SOC) continuing the denial of the hearing loss claim. However, the SOC contained no discussion or analysis regarding the evidence submitted along with the May 1999 NOD. R. at 100-07. The RO noted that it had requested from Mr. Kyhn "evidence to well ground his claim," but that "[n]one has been received." R. at 105. Mr. Kyhn appealed to the Board, stating that the RO had incorrectly found that he failed to respond to a request for information. R. at 109. In September 1999, Mr. Kyhn underwent a VA audiological examination. R. at 112-13. The audiologist recorded Mr. Kyhn's reported history of noise exposure in service and opined that because of the "presence of the veteran's military noise exposure and farming occupational noise exposure, it is reasonable to assume that at least a portion of his hearing loss may have been acquired due to military service."

2

*Id.* In November 1999, the RO issued a Supplemental SOC (SSOC) denying service connection for tinnitus, but granting service connection for hearing loss and assigning a 50% disability rating. R. at 115-17. Mr. Kyhn did not appeal the RO's denial of service connection for tinnitus. *See* R. at 1-590.

In January 2004, Mr. Kyhn sought to reopen the tinnitus claim. R. at 262. He provided another letter from Mr. Foss, who, in a statement to Mr. Kyhn, opined that "[f]rom [Mr. Kyhn's] history of noise exposure while in the military, without the benefit of hearing protection, it is quite likely this was the beginning of your hearing loss and tinnitus." R. at 258. In May 2004, the RO determined that Mr. Kyhn's evidence was not new and material. R. at 404-08. Mr. Kyhn appealed and, in January 2006, the Board determined that Mr. Foss's January 2004 statement constituted new and material evidence sufficient to reopen the previously denied tinnitus claim; the Board remanded the matter for the RO to afford Mr. Kyhn a VA audiological examination "in order to ascertain the etiology and severity of any tinnitus that may be present." R. at 552.

In February 2006, the Lincoln, Nebraska, RO forwarded an audiological examination request to the VA Nebraska Western Iowa Health Care System. R. at 574-75. That examination was scheduled for March 7, 2006; however, Mr. Kyhn failed to appear for the examination. *See* R. at 557. On March 31, 2006, the RO issued an SSOC in which it denied service connection for tinnitus based on Mr. Kyhn's reported failure to appear for his March 7, 2006, examination. R. at 577-81. In April 2006, Mr. Kyhn responded to a March 2006 request for information by stating that he had no other information or evidence to give to VA and requested that VA decide his claim as soon as possible. R. at 587. The matter was returned to the Board and in its May 17, 2007, decision, the Board denied service connection for tinnitus after finding that the record contained no probative evidence that Mr. Kyhn's tinnitus was incurred in or causally related to service or aggravated by any service-connected disability. As part of its decision, the Board determined that the Secretary had complied with his duty to assist, pursuant to 38 U.S.C. § 5103A, because a VA audiology examination was scheduled and "notification of the examination was mailed to the veteran at his correct address of record." R. at 5. The Board noted that, in accordance with 38 C.F.R. § 3.655, "[w]hen, as here, entitlement to a VA benefit cannot be established or confirmed without a current VA examination or reexamination and a claimant without good cause, fails to

3

report for such examination scheduled in conjunction with an original compensation claim, the claim shall be rated on the evidence of record." 38 C.F.R. § 3.655. This appeal followed.

## II. LAW AND ANALYSIS

### A. Presumption of Regularity–Notice of Scheduled Examination

There is a presumption of regularity under which it is presumed that government officials properly discharge their official duties in good faith and in accordance with law and governing regulations. *Marsh v. Nicholson*, 19 Vet.App. 381, 385 (2005); *Sthele v. Principi*, 19 Vet.App. 11, 17 (2004)*; Ashley v. Derwinski*, 2 Vet.App. 307, 308 (1992). The Court has applied the presumption of regularity to various processes and procedures throughout the VA administrative process, including the RO's mailing of notice of a VA medical examination. *Jones v. West*, 12 Vet.App. 98, 100-02 (1998). The presumption of regularity is not absolute; however, it may be overcome *only* by the submission of "clear evidence to the contrary." *Ashley*, 2 Vet.App. at 309. A claimant's mere statement of nonreceipt is insufficient for that purpose. *See Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001). Whether the presumption of regularity attaches to the public actions of a public official is a question of law that the Court reviews de novo. *Marsh*, 19 Vet.App. at 386; 38 U.S.C. § 7261(a)(1). Additionally, whether clear evidence exists to rebut the presumption of regularity is a question of law that the Court reviews de novo. *See Clark v. Nicholson*, 21 Vet.App. 130, 133 (2007).

In this case, Mr. Kyhn contends, for the first time on appeal to this Court, that he never received notice of the March 2006 VA audiological examination, and he argues that the presumption of regularity that the RO mailed notice of the examination to him cannot be applied to his case to establish that he received notice of the scheduled examination. The appellant argues that because VA did not follow its regular procedure (regarding mailing notice of VA examinations), he did not receive notice of the March 2006 VA examination; this argument triggers the Court's inquiry into VA's regular procedure regarding scheduling and notifying claimants of VA medical examinations. The Court therefore ordered the Secretary to provide the Court with information concerning the regular process by which VA notifies veterans of scheduled VA examinations.

In response, the Secretary provided affidavits from Jo Ellen Bash, Compensation and Pension Program manager at the VA Nebraska Western Iowa Health Care System and Margaret Bunde,

4

Veteran Service Center manager for the Lincoln, Nebraska, VA RO. Ms. Bash avers that when the RO schedules an examination for a claimant, the RO prepares and electronically transmits an examination request to the VA medical center (VAMC) in whose primary service area the claimant resides. Declaration of Jo Ellen Bash at ¶ 3-4; *see also* Declaration of Margaret Bunde at ¶ 2; Secretary's Response to the Court's August 14, 2009, Order [hereinafter Secretary's Aug. 31, 2009, Response] at 3 (citing to) the VETERANS BENEFITS ADMINISTRATION MANUAL M-21-1 (M-21-1), pt. VI, ch. 1.03-.04; VETERANS HEALTH MANUAL M-1 (M-1), pt. VI, ch. 20.03. The examination request is given to "a scheduling clerk who inputs the examination request into the Automated Medical Information Exchange [AMIE] system" and then, "[u]sing the information from the AMIE system, the scheduling clerk electronically generates a letter to the veteran which informs him of the scheduled examination, including its time and location." Declaration of Jo Ellen Bash at ¶ 3-4.

The Secretary asserts that the "examination notifications are generated through the Veterans Information Systems and Technology Architecture . . . software" and the automatically generated letter is then mailed from the VAMC to the veteran and his or her power of attorney (POA), if any. Secretary's Aug. 31, 2009, Response at 4. "Because the letter is electronically generated by the Outputs Options computer system program, a hard copy of the letter is not retained by the VAMC or filed in the claims folder." *Id.* (relying on Declaration of Jo Ellen Bash at ¶ 5). If a claimant does not attend the scheduled examination, the VAMC electronically notifies the RO of this fact. Declaration of Margaret Bunde at ¶ 4; M-1, pt. VI, ch. 20.14. The RO issues an SSOC to a claimant and his representative notifying them that the claimant failed to report for the examination. Declaration of Margaret Bunde at ¶ 4.

Mr. Kyhn objects to the Court's consideration of the Secretary's affidavits because he claims that the affidavits constitute evidence regarding the mailing of the notification letter to him, and that that evidence was not included in the record before the agency. Additionally, he argues that if the Court considers this evidence, it will be engaging in prohibited factfinding. The Court rejects the appellant's position. Here, the Court's inquiry into the presumption of regularity of the mailing of the notice of the March 2006 examination has been raised by Mr. Kyhn's assertion in his brief that he did not receive notice of the scheduled examination. *See Baxter v. Principi*, 17 Vet.App. 407, 411 (2004) (holding that a denial of receipt of Agency notice of an RO decision triggers an inquiry into

5

the presumption of regularity); *see also Posey v. Shinseki*, 23 Vet.App. 406, 410 (2010) (noting there that it was the Secretary's burden to demonstrate by, e.g., affidavits of VA personnel, that remailing procedures followed in this particular case were the consistent and regular procedure that VA follows in cases in which the Board decision is remailed to the claimant).

As part of the de novo process for determining whether the presumption of regularity attaches to a particular VA practice, the Court must ascertain the exact nature of the VA practice. *See Marsh, supra* (the Court determines on a de novo basis whether the presumption of regularity attaches). The purpose of such a de novo inquiry is to determine whether there is a regular and established VA practice to which the presumption of regularity may be applied.

Oftentimes, VA's practices are set forth in a VA regulation or a practice manual such as the *VA Adjudication Procedures Manual* (M-21-1). *See, e.g.*, *Marsh*, 19 Vet.App. at 386-87 (relying on VA regulations to establish VA procedures for issuing SOCs); *Johnson v. Shinseki*, 23 Vet.App. 344, 351 (2010) (relying on sections of the M-21-1 to establish VA procedures regarding obtaining doctor's signature on VA examination report). However, occasionally VA's practices are not set forth in a published form. *See Johnson,* 23 Vet.App. at 351 (noting that the Secretary made an oral representation regarding VA's practice of transmitting examination reports through the Compensation and Pension Record Interchange); *see also Smith v. Shinseki*, 24 Vet.App. 40, 46 (2010) (noting that the Secretary made an oral representation that the military does not conduct entrance medical examinations when a person enters a period of active duty for training). In such instances, it is appropriate for VA to use a declaration to advise the Court of its regular practice and procedure.

Here, while VA has a written procedure for scheduling examinations that is set forth in its manuals, it does not have written instructions regarding the procedures it follows to notify a claimant of a scheduled examination. Although VA's practice for providing such notification is not reduced to writing, the affidavits demonstrate that VA does have an established procedure for notifying claimants of such examinations. The affidavits describe that procedure in detail. Notably, the appellant does not challenge the assertions contained in the affidavits.

Contrary to Mr. Kyhn's assertion, the Court is not relying on the affidavits, or information attached thereto, as evidence to establish that notice was mailed to him *(see,* attachments to

6

affidavits: an August 2009 copy of a computer entry noting the date on which Mr. Kyhn's March 2006 was scheduled; and the August 2009 copy of the letter addressed to Mr. Kyhn notifying him of the March 2006 examination, which was regenerated from the electronic files). Rather, the Court is relying on the relevant portion of the affidavits merely to ascertain whether VA has an established procedure for scheduling and notifying claimants of examinations to which the presumption of regularity should attach. After reviewing the relevant portion of the affidavits, the Court is satisfied that VA does have an established procedure for notifying claimants of VA examinations. The Court also holds, as a matter of law, that VA is entitled to a presumption of regularity that VA employees properly discharged their official duty to notify Mr. Kyhn of the March 2006 examination in accordance with the procedures set forth in the affidavits. There is evidence of record that supports application of the presumption here – the actions were consistent with VA's procedures such that the presumption is invoked: (1) On February 3, 2006, the RO requested the VA Nebraska Western Iowa Health Care System to schedule an audiological examination (R. at 574-75); (2) a March 8, 2006, printout from the AMIE system indicated that the appellant's audiological examination was cancelled because he failed to report for a scheduled examination on March 7, 2006 (R. at 557); Declaration of Margaret Bunde at ¶ 4 (noting that the VAMC electronically notifies the RO that an examination is cancelled); and (3) a March 2006 SSOC to the appellant notified him of his failure to report to the VA examination (R. at 578-81).

B. Rebutting the Presumption

The next question presented is whether Mr. Kyhn's assertion of nonreceipt of the notice of the March 2006 examination coupled with the fact that there is no copy of VA's computer-generated notice to him of the March 2006 examination (*see* R. at 1-590) is sufficient to rebut the presumption of regularity. The Court holds that it is not. Because the regular practices of VA do not include maintaining a hard copy of the veteran's notice of his or her scheduled VA examination, the absence of any such copy from the claims file cannot be used as evidence to demonstrate that that notice was not mailed.

However, the Court notes that even if VA practice were to include a copy of the notice letter in the veteran's claims file, the absence of the letter from the claims file would not rebut the presumption of regularity. There is no requirement for that document to be contained in the record

7

for the presumption of regularity to apply. In *Butler v. West*, the appellant argued that, because a copy of the notice of appellate rights was not contained in the record, the Court could not presume that it was mailed. *Butler v. West*, No. 98-2073, 1999 WL 1063300 (Vet. App. Nov. 8, 1999), *aff'd sub nom. Butler v. Principi, supra*. The Court disagreed, noting that the record contained notice of the RO's decision, which stated that the notice of appellate rights was attached; the Court held that "[b]ased on the presumption of regularity, it is presumed that the [agency of original jurisdiction (AOJ)] properly discharged its responsibility and attached a notice of appellate rights to the letter sent to the appellant." *Id.* at \*1.

Although Mr. Kyhn's case may be distinguished from *Butler*, in that here there is no document indicating that the notice of examination was attached, the record does contain other evidence that demonstrates that notice of the examination was mailed to Mr. Kyhn. The examination cancellation notice states that the "veteran failed to report for exam on 3/7/06, notification was mailed to 2341 2nd Ave, Boelus, N[ebraska,] 68820. POA/Berry was also notified." R. at 557. The Board reviewed this evidence and determined that "the record shows that notification of the examination was mailed to the veteran at his correct address of record, and there is no indication that notice of this examination was returned by postal authorities as undeliverable." R. at 5. Mr. Kyhn does not contend that he did not reside at the address listed at the time. *See* Appellant's Brief (Br.) at 1-16. The Board's interpretation of this document is consistent with VA's practices.

Accordingly, the record reflects that the RO followed the regular process for scheduling an examination and notifying Mr. Kyhn of that examination. The record establishes that on February 3, 2006, the RO requested that the VAMC schedule Mr. Kyhn for an audiology examination. R. at 574-75. Because the record contains evidence that the RO followed its procedure for requesting and scheduling a medical examination and because the examination cancellation notice stated that notification of the examination was mailed to the veteran at his address, it may be presumed as in *Butler,* that the Secretary discharged his duties by mailing to Mr. Kyhn notice of the scheduled examination and did in fact mail that notice. *See Butler v. Principi*, and *Ashley*, both *supra.*

Moreover, even if Mr. Kyhn did not receive notice of his scheduled March 2006 VA examination, VA made him aware of that examination and the consequences of his failure to report

8

to it in the RO's March 2006 SSOC. R. at 580. Despite this notice, Mr. Kyhn indicated that he had no further information to submit. At no time prior to the Board's May 2007 decision did Mr. Kyhn assert that he had not received notice of his scheduled VA examination, despite having the opportunity to do so. Indeed, the record before the Board does not contain any statements by the appellant that he did not receive notice of the scheduled medical examination.[1]

Mr. Kyhn points to other evidence in the record that he argues is sufficient to rebut the presumption of regularity: (1) VA adjudicated his hearing loss claim erroneously believing that he had not submitted evidence in support of the claim; and (2) VA maintains an "Appeal Certification Worksheet" that was not completed upon remand from the Board. App. Br. at 5-8.

Concerning Mr. Kyhn's argument that VA adjudicated his hearing loss claim erroneously believing that he had not submitted evidence in support of that claim, the evidence of record reveals that, in response to the RO's August 1998 denial of service connection for hearing loss, Mr. Kyhn filed an NOD and submitted medical evidence revealing a diagnosis of hearing loss that was believed to be related to service. R. at 96-99. Although Mr. Kyhn is correct that the RO adjudicated his claim assuming that he had not submitted evidence in support of it, that error pertains to the RO's

---

[1] Mr. Kyhn also makes a confusing due process argument in his motion for reconsideration. Appellant's Motion for Reconsideration at 7-8. He appears to argue that his right to procedural due process under the fifth amendment of the Constitution was violated. Specifically, he argues that this violation occurred because the record does not contain any acceptable proof that he was notified of the March 2006 examination. He contends that the only acceptable proof of such a mailing requires the RO to have retained a copy of the notice letter in his claims file. In this regard, he seems to argue that the Court's reliance on the presumption of regularity in the absence of such a copy of the letter violates his due process rights. However, the appellant cites no authority to support his argument.

In *Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009) the U.S. Court of Appeals for the Federal Circuit made clear that a VA claimant attempting to show a due process violation must show that he was denied fair process and that he was prejudiced by such a violation. *Id*. at 1300. Here, even if the Court were to assume that there is no acceptable proof that notice of the March 2006 examination was mailed to Mr. Kyhn, he has not established that he was denied fair process and suffered prejudice as a result of any due process violation.

Mr. Kyhn does not contest the fact that the RO mailed the March 2006 SSOC to him and his attorney. The March 2006 SSOC was sent to him at a time when he could have notified VA that he did not receive notice of the examination, established good cause for his failure to attend the examination, and rescheduled the examination. However, neither the appellant nor his attorney took any action upon receipt of the March 2006 SSOC. Consequently, Mr. Kyhn has failed to establish that he suffered from a due process violation that prejudiced him.

adjudication of his claim for *hearing loss* and not the tinnitus claim presently at issue. Mr. Kyhn has not persuaded the Court that prior adjudicative errors in a separate matter constitute clear evidence to rebut the presumption of regularity applicable to his tinnitus claim.

Mr. Kyhn also contends that the absence of a completed "Appeal Certification Worksheet" in conjunction with his remanded claim is evidence that rebuts the presumption of regularity. He maintains that the lack of this document demonstrates that VA did not adjudicate his claim in a "normal" fashion. There is contained in the record an "Appeal Certification Worksheet," dated April 15, 2005, prior to the Board's January 2006 remand decision. R. at 535-37. Thus, it appears that Mr. Kyhn is arguing that VA had a duty to complete a second "Appeal Certification Worksheet" prior to returning his claim to the Board after its January 2006 remand decision.

When a claimant indicates the desire to appeal an unfavorable RO decision to the Board, the *VA Adjudication Procedures Manual* (M21-1MR) provides for a series of steps for VA to take to ensure that the case is ready for appeal. Upon review of the claims folder, a decision review officer (DRO) "verifies that all issues on appeal have been decided," determines whether the "appropriate development has been initiated and properly disposed of, and completes the certification worksheet." M21-1MR, pt. I, ch. 5, sec. F (2007). Thereafter, the DRO completes a "VA Form 8, Certification of Appeal." *Id.* Section 19.35 of title 38, Code of Federal Regulations, requires that a VA Form 8 must be completed in every appeal to the Board. 38 C.F.R. § 19.35 (2010) (providing that after "receipt of a timely Substantive Appeal, the [AOJ] will certify the case to the Board . . . . Certification is accomplished by the completion of VA Form 8). However, nothing in the regulations governing this issue requires VA to prepare a second VA Form 8 for remanded claims that are returned to the Board. Indeed, 38 C.F.R. § 19.38 provides:

> When a case is remanded by the Board of Veterans' Appeals, the agency of original jurisdiction will complete the additional development of the evidence or procedural development required. Following completion of the development, the case will be reviewed to determine whether the additional development, together with the evidence which was previously of record, supports the allowance of all benefits sought on appeal. If so, the appellant and his or her representative, if any, will be promptly informed. If any benefits sought on appeal remain denied following this review, the agency of original jurisdiction will issue a Supplemental Statement of the Case concerning the additional development pertaining to those issues in accordance with the provisions of [38 C.F.R.] § 19.31 of this part. Following the 30-day period

10

allowed for a response to the Supplemental Statement of the Case pursuant to Rule of Practice 302, paragraph (c) (§ 20.302(c) of this chapter), the case will be returned to the Board for further appellate processing unless the appeal is withdrawn or review of the response to the Supplemental Statement of the Case results in the allowance of all benefits sought on appeal. Remanded cases will not be closed for failure to respond to the Supplemental Statement of the Case.

38 C.F.R. § 19.38 (2010).

Further, the M21-1MR establishes steps VA must take regarding claims remanded from the Board. It does not require VA to prepare a second VA Form 8 or an additional "Appeal Certification Worksheet" prior to returning the matter to the Board. Rather, if evidence is received on the remanded claim, but the benefit sought cannot be granted, the M21-1MR indicates to "note the following in the 'Remarks' block of *VA Form 8, Certification of Appeal* filed in the claims folder: *'Determination of* **[date shown in the "Date" block]** *confirmed.*'" M21-1MR, pt. I, ch. 5, sec. G (2005). If no evidence was received, the RO is to note the following in the "Remarks" block of the VA Form 8: "*The appellant, and his/her representative, has failed to submit evidence requested in* [*Board*] *remand within the prescribed period, and the attached claims folder is returned for appellate consideration on the basis of the evidence of record.*" *Id.*

Accordingly, because there is neither a regulatory requirement that VA complete an "Appeal Certification Worksheet," nor do VA's internal procedures require that VA undertake such action a second time when a claim is on remand, the absence of a second "Appeal Certification Worksheet" in the record cannot rise to the level of clear evidence to rebut the presumption of regularity concerning notice of the scheduled examination. As such, the evidence offered by Mr. Kyhn does not constitute clear evidence to rebut the presumption of regularity and, thus, it is presumed that VA mailed to him notice of his scheduled March 2006 VA audiological examination.

Further, even if the Court were to assume that these claimed irregularities occurred as alleged by Mr. Kyhn, the Court would still not be persuaded that these irregularities, coupled together, are sufficient to rebut the presumption of regularity. Although in *Sthele, supra,* this Court held that multiple irregularities involved with the appellant's appeal coupled with his assertion that he had not received a copy of a Board decision constituted clear and unmistakable evidence to rebut the presumption of regularity, this case is distinguishable from *Sthele*. In *Sthele*, the Court found that the appellant's claims file contained documents related to his son's claim for dependent educational

11

assistance (DEA) that were improperly addressed to the appellant as though he were the claimant in the DEA claim and that some of these documents were mailed by the RO to the appellant at his son's address, which was different from the address the appellant had provided VA in connection with his service-connection claims. *Sthele*, 19 Vet.App. at 17-18. These irregularities left the Court "with serious doubt as to whether the Board's decision was mailed to the appellant at his last known address." *Id*. at 18. Here, however, because the Court has found that there is a regular process for mailing notice of scheduled examinations and there is evidence that VA followed this process, Mr. Kyhn's other arguments, even if the Court were to consider what they allege as irregularities, do not leave the Court with a "serious doubt" as to whether the notice of the scheduled medical examination was mailed to the appellant at his last known address. *Id.* As such, the evidence offered by Mr. Kyhn of other irregularities could not constitute clear evidence to rebut the presumption of regularity and, thus, it is presumed that VA mailed to him notice of his scheduled March 2006 VA audiological examination.

Having presumed that notice was indeed mailed, and finding that Mr. Kyhn had not presented "good cause" for his failure to report for the scheduled examination, the Board adjudicated the claim on the evidence of record and determined that service connection was not warranted. *See* 38 C.F.R. § 3.655(a), (b) (2010) (providing for actions to be taken when an appellant, "without good cause, fails to report" for a VA medical examination). Section 3.655(b) of title 38, Code of Federal Regulations, instructs that for reopened claims, "[w]hen a claimant fails to report for an examination . . . , the claim shall be denied." 38 C.F.R. § 3.655(b). The Court thus holds that the Board was correct in denying, and indeed was compelled by § 3.655(b) to deny, Mr. Kyhn's tinnitus claim. *See* 38 C.F.R. § 3.655(b); *see also Wood v. Derwinski,* 1 Vet.App. 190, 193 (1991) ("The duty to assist is not always a one-way street.").

### C. *Stegall* Violation

Mr. Kyhn argues that the Board erred by failing to ensure compliance with its January 2006 remand instructions because he was not provided with a VA audiological examination. In *Stegall*, this Court held that "a remand by this Court to the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders." *Stegall*, 11 Vet.App. at 271. The Court also held that "the Secretary . . . [had] a concomitant duty to ensure compliance with the

terms of the remand" and that "the Board itself errs in failing to insure compliance." *Id.* It is substantial compliance, not absolute compliance, that is required. *See Dyment v. West*, 13 Vet.App. 141, 146-47 (1999).

In its January 2006 remand order, the Board instructed the RO to make "[a]rrangements . . . with the appropriate VA medical facility for the veteran to be afforded a VA audio examination in order to ascertain the etiology and severity of any tinnitus that may be present." R. at 552. On February 3, 2006, the RO requested the VA Nebraska Western Iowa Health Care System to schedule Mr. Kyhn for an audiological examination. R. at 574. As discussed above, the record reflects that that examination was scheduled for March 7, 2006. R. at 557. Thus, the Court holds that the Board complied with the January 2006 remand. *See Dyment, supra*. In accordance with the Board's instructions, VA made arrangements for Mr. Kyhn to be examined at an appropriate VA facility. Mr. Kyhn's failure to report for that examination, without a demonstration of good cause, does not negate VA's compliance with the Board's remand orders. *See* 38 C.F.R. § 3.655(a) (2010) (setting forth examples of good cause for missing scheduled VA examination).

D. Board's Statement of Reasons or Bases

The Board's determination of service connection is reviewed under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Rose v. West*, 11 Vet.App. 169, 171 (1998). Therefore, "if there is a 'plausible' basis in the record for the factual determinations of the [Board]," the Court cannot overturn them even if it might not have reached the same conclusion in the first instance. *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). As with all of its decisions, the Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57.

Mr. Kyhn argues that the Board's denial of service connection is not supported by an adequate statement of reasons or bases because the Board improperly discounted evidence favorable to his claim and failed to take into consideration certain lay statements. Mr. Kyhn's argument, however, overlooks the regulatory provisions governing the disposition of reopened claims when a claimant

13

fails to report for a medical examination. Section 3.655 of title 38, Code of Federal Regulations, provides in pertinent part:

> (a) General. When entitlement or continued entitlement to a benefit cannot be established or confirmed without a current VA examination or reexamination and a claimant, without good cause, fails to report for such examination, or reexamination, action shall be taken in accordance with paragraph (b) or (c) of this section as appropriate.

> (b) Original or reopened claim, or claim for increase. When a claimant fails to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record. *When the examination was scheduled in conjunction with . . . a reopened claim for a benefit which was previously disallowed . . . the claim shall be denied.*

38 C.F.R. § 3.655 (emphasis added). Accordingly, upon finding that Mr. Kyhn had not demonstrated good cause for failing to report for his scheduled VA audiological examination, the Board should have denied his reopened claim for tinnitus in accordance with § 3.655 rather than adjudicating the tinnitus claim on the merits. Although the Board's adjudication of Mr. Kyhn's claim on the merits contradicted the regulatory requirement to deny the claim, the Board's ultimate conclusion – that service connection for tinnitus is not warranted – is not clearly erroneous and, thus, any inadequacies in the Board's statement of reasons or bases for its denial of Mr. Kyhn's claim on the merits would constitute nonprejudicial error because under § 3.655(b) he was properly denied service connection for tinnitus. *See* 38 U.S.C. § 7261(b)(2) (providing that Court shall take due account of rule of prejudicial error); *Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004); *see also Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994) (holding that where law and not evidence is dispositive, claim should be denied or appeal terminated because of lack of legal merit or lack of entitlement under the law); 38 C.F.R. §3.655(b).

### E. Secondary Service Connection

Mr. Kyhn further asserts that the Board erred by failing "to consider whether the service connection bilateral hearing loss, rated at 50[%], was a source of aggravation." App. Br. at 13. The Court construes this as an argument that the Board failed to consider service connection for tinnitus on a secondary basis. A disability may be service connected on a secondary basis by demonstrating that that disability is either (1) "proximately due to or the result of [an already] service-connected disease or injury," 38 C.F.R. § 3.310 (2010) , or (2) aggravated by an already service-connected

14

disease or injury, "whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition," *Allen v. Brown,* 7 Vet.App. 439, 448 (1995) (en banc).

The Secretary asserts that because Mr. Kyhn has raised this matter for the first time in his brief to the Court, the Board did not err in failing to address whether he was entitled to service connection for hearing loss based on aggravation. The Court agrees. Although Mr. Kyhn now contends that the Board should have considered whether his service-connected hearing loss aggravated his non-service-connected tinnitus, he points to nothing in the record demonstrating that the issue of whether his hearing loss aggravated his tinnitus was reasonably raised. Accordingly, he has not demonstrated that it was error for the Board not to address that issue. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant has burden of demonstrating error); *compare Sondel v. Brown*, 6 Vet.App. 218, 220 (1994) (when issue is not reasonably raised, Board is not required to "conduct an exercise in prognostication"), *with Carpenter v. West*, 11 Vet.App. 140, 146-47 (1998) (Board must review all issues reasonably raised by liberal reading of appeal). Further, the Court's jurisdiction is limited to consideration of final decisions of the Board. *See* 38 U.S.C. §§ 7252(a) (Court has exclusive jurisdiction to review final Board decisions), 7266(a) (claimant must appeal final decision of Board to obtain Court's review). Accordingly, the Court declines to address Mr. Kyhn's argument in this regard. *See Maggitt v. West*, 202 F.3d 1370, 1377-78 (Fed. Cir. 2000) (issues presented for first time on appeal may be addressed, disregarded, or remanded back to Board for further development).

## III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the May 17, 2007, Board decision is AFFIRMED.