Citation Nr: 1134090 
Decision Date: 09/12/11 Archive Date: 09/22/11

DOCKET NO. 07-05 539 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include depression and posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Tennessee Department of Veterans' Affairs


ATTORNEY FOR THE BOARD

Terrence T. Griffin, Associate Counsel








INTRODUCTION

The Veteran served on active duty from October 1964 to October 1966, to include service the Dominican Republic from April 1965 to May 1966.

This matter comes before the Board of Veterans' Appeals (Board) from an April 2005 rating decision of the Department of Veterans Affairs (VA) Nashville, Tennessee, Regional Office (RO). During the pendency of the present appeal, the Veteran relocated to the state of Alabama and the Montgomery, Alabama, RO properly has jurisdiction over the claim. 

The Board previously remanded this matter for additional development in March 2008.

Based on the evidence of record and Clemons v. Shinseki, 23 Vet. App. 1 (2009), the Board has recharacterized the Veteran's claim on appeal, as reflected on the title page. 

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.


REMAND

Initially, the Veteran seeks to establish entitlement to service connection for an acquired psychiatric disorder, to include depression and PTSD, maintaining that that, while attached to the 584th Medical Company at the 42nd Field Hospital in the Dominical Republic, he (I) witnessed the death of a fellow service-member; (II) was exposed to numerous casualties, military and civilian; and (II) was exposed to enemy mortar attack(s). The evidence of record confirms the Veteran's attachment to the 584th Medical Company, while stationed at the 42nd Field Hospital in the Dominical Republic, from April 1965 to October 1966. Appropriate inquiry with the U.S. Army and Joint Services Research and Records Center (JSSRC) also confirms that the 42nd Field Hospital was exposed to significant casualties "during the first few days of conflict and in mid-June" and, at a minimum, treated noted 117 injuries/casualties related to hostile military activity. See JSSRC Response Report, Aug. 13, 2008; "Annual Historical Summary," 42D Field Hospital, December 1964-October 1966. Essentially, in spite of JSSRC being unable to confirm his specific account of the death of a specific fellow service-member, the Veteran's account of exposure to enemy attack and related casualties has been sufficiently corroborated. See Pentecost v. Principi, 16 Vet. App. 124 (2002) (base subjected to rocket attacks during time that Veteran was stationed at the base). 

In March 2008, the present matter was remanded to afford the Veteran appropriate VA examination. A review of the record shows that the Veteran failed to appear for the scheduled March 2011 examination; however, there is a question as to whether he received adequate notice of the examination. Generally, there is a presumption of regularity under which it is presumed that the Veteran was properly mailed notice of the examination, even when there is no hard copy of the notice letter in the Veteran's claims folder. See Kyhn v. Shinseki, 24 Vet. App. 228, 232 (2011). Nevertheless, a review of the record reveals that the address utilized by the AMC/RO on the VA examination request (i.e. the P.O. Box number street name and zip code) does not reflect the verified address of the Veteran or the address utilized on other correspondence to the Veteran. While not definitive, the present state of the record sufficiently rebuts the presumption of regularity and raises the possibility that the Veteran did not receive the VA examination notice letter. As such, the claim must be remanded to ensure the Veteran is provided the examination notice mandated by due process. 

Additionally, while not definitive, the Board observes that the evidence of record suggests the Veteran likely receives regular relevant medical treatment; however, pertinent private treatment records of his care, dated since September 1988, have not been associated with the claims file. Further, there are no VA treatment records, dated after September 1983, of record. Consequently, the Board finds that an effort should also be made to obtain additional pertinent treatment records.

Finally, the Board finds it necessary to remind the Veteran that the "duty to assist is not always a one-way street," and he has an obligation to actively participate in the retrieving of any information pertinent to her claim, to include attending scheduled VA examinations and identifying relevant records. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Further, pursuant to 38 C.F.R. § 3.655 (2010), failure to appear for a scheduled VA examination and/or identify relevant records may detrimentally affect the claim because the subsequent adjudication will be based solely on the evidence of record. Given the forgoing, the Veteran is urged to attend the scheduled examination, reply to requests for information, and notify VA of any revisions to his address. 

Accordingly, the case is REMANDED for the following action:

1. The AMC/RO should ask the Veteran to identify all sources of private psychiatric treatment and/or hospitalization, since September 1998, to include private physician T. Sherman, M.D., private therapist A. Lauria, M.A., and the private East Center for Community Mental Health, Inc. Then the AMC/RO shall undertake appropriate efforts to obtain any identified records. 

2. The AMC/RO should obtain all outstanding VA treatment and or hospitalization records related to the Veteran's psychiatric condition, to include his local VA Medical Center and the Ann Arbor, Michigan, VA Medical Center, since September 1983. Any negative response should be in writing and associated with the claims folder. 

3. After associating all outstanding records with the claims folder, the AMC/RO should schedule the Veteran for a VA examination to determine the current nature and etiology of any acquired psychiatric disorder. The AMC/RO should utilize the address noted on the August 2011 Board correspondence to the Veteran, or any revision he communicates. The claims folder should be reviewed by the examiner and that review should be indicated in the examination report. The examiner should record the full history of the Veteran's acquired psychiatric disorder including the Veteran's account of symptomatology and onset.

The VA examiner should specifically address the following: 

a) Diagnose all current acquired psychiatric disorders, if any are present.

b) If a diagnosis of PTSD is warranted, specify the in-service stressor(s), if any, upon which that diagnosis is based, to include sufficiently confirmed exposure to in-service casualties and being subject to enemy attack.

c) With respect to any acquired psychiatric disorder, other than PTSD, opine whether it is at least as likely as not that the condition (i) had its onset in-service, and/or (ii) is related to the Veteran's period of military service. 

The VA examination report must reflect the examiner's consideration and analysis of both the medical and lay evidence of record, to include (i) the Veteran's account of in- and post-service symptomatology, (ii) the March 1986 private psychiatric examination; (iii) VA examinations, dated in September 1987 and February 1993; (iv) the September 1998 and June 1991 statements of private therapist A. Lauria, M.A.; (v) the January 1992 independent medical opinion of J. Bullen, M.D.; and any other evidence deemed pertinent. 

All findings and conclusions should must be supported with a complete rationale and set forth in a legible report.

4. The AMC/RO should review the examination report to determine if it is in compliance with this remand. 

If deficient in any manner, it should be returned, along with the claims file, for immediate corrective action.

5. The AMC/RO should thereafter review the additional evidence that has been obtained and determine whether the benefit sought on appeal may now be granted. If the benefit sought on appeal remains denied, the Veteran and his representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).


_________________________________________________
Michael J. Skaltsounis
Acting Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2010).