# United States Court of Appeals for the Federal Circuit

---

**ARNOLD C. KYHN,**
*Claimant-Appellant,*

v.

**Eric K. Shinseki, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7003

---

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 07-2349.

---

Decided: May 3, 2013

---

PERRY A. PIRSCH, Berry Law Firm, PC, of Lincoln, Nebraska, argued for the claimant-appellant. Of counsel was JEANNE A. BURKE, of Omaha, Nebraska.

STEVEN M. MAGER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director. Of counsel on the brief were MICHAEL J.

TIMINSKI, Deputy Assistant General Counsel, and Jonathan E. Taylor, Attorney, United States Department of Veteran Affairs, of Washington, DC.

---

Before RADER, *Chief Judge*, LOURIE, AND WALLACH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* WALLACH.
Dissenting opinion filed by *Circuit Judge* LOURIE.

WALLACH, *Circuit Judge*.

Arnold C. Kyhn appeals from the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the Board of Veterans' Appeals' ("Board") denial of Mr. Kyhn's tinnitus claim. *Kyhn v. Shinseki*, 24 Vet. App. 228 (2011) ("*Kyhn II*"). In particular, Mr. Kyhn challenges the Veterans Court's reliance on affidavits that were not part of the record before the Board. Because the Veterans Court lacked jurisdiction to rely on this extra-record evidence, we vacate and remand.

## BACKGROUND

Mr. Kyhn served in the United States Army from May 1945 to October 1946. In February 1998, he filed a claim for service-connected hearing loss, which was denied by the Veterans Affairs ("VA") regional office ("RO"). Mr. Kyhn submitted a Notice of Disagreement ("NOD"), accompanied by medical evidence from his private audiologist that he suffered from hearing loss attributable to his military service. Mr. Kyhn also asserted in his NOD that he was seeking service connection for tinnitus. After various proceedings, the RO granted service connection for hearing loss at a 50% rating, but denied service connection for tinnitus. Mr. Kyhn did not appeal this decision and it became final.

In January 2004, Mr. Kyhn sought to reopen his tinnitus claim, and presented another letter from his

private audiologist stating that Mr. Kyhn's "history of noise exposure while in the military, without the benefit of hearing protection, . . . is quite likely . . . the beginning of [his] hearing loss and tinnitus." *Kyhn II*, 24 Vet. App. at 231. Although the RO declined to reopen the tinnitus claim, the Board found the private audiologist's statement constituted new and material evidence and remanded to the RO to afford Mr. Kyhn a VA examination to "ascertain the etiology and severity of any tinnitus that may be present." *Id.* The RO scheduled an examination for March 7, 2006, but Mr. Kyhn failed to attend. Not long after, the Board denied service connection for tinnitus, based on the evidence of record.[1] Mr. Kyhn appealed to the Veterans Court.

Before the Veterans Court, Mr. Kyhn argued, *inter alia*, that there was good cause for his failure to attend the VA examination because the VA failed to provide him with notice of when it was scheduled. The Veterans Court applied the presumption of regularity to presume that Mr. Kyhn had received notice of the examination, and affirmed the Board's denial of service connection.

To determine whether the presumption of regularity applied, the Veterans Court ordered the Secretary of Veterans Affairs ("Secretary") to provide the court with "information concerning the regular process by which VA notifies veterans of scheduled VA examinations." *Kyhn II*, 24 Vet. App. at 233. The Secretary complied and submitted two affidavits from VA employees, only one of whom professed personal knowledge of the regular

---

[1] The Board explained that when a veteran fails to attend a scheduled examination, "the claim shall be rated on the evidence of record." *In re Kyhn*, No. 99-21-607, slip op. at 5 (Bd. Vet. App. May 17, 2007) (citing 38 C.F.R. § 3.655).

practice for mailing such notice to veterans.[2] Jo Ellen Bash, a manager at the VA Medical Center ("VAMC") in Omaha, Nebraska, stated that a scheduling clerk typically provided a veteran with notice of his VA examination by "electronically generat[ing] a letter to the veteran" from the Automated Medical Information Exchange system. J.A.88.

Relying on this evidence, the Veterans Court found the VA had a regular practice to provide veterans with notice of their VA examinations and applied the presumption of regularity to presume the VA had properly notified Mr. Kyhn in accordance with this practice.[3] The Veterans Court further held that the absence of a copy of notice in Mr. Kyhn's claims file and prior irregularities in processing his claim did not "constitute clear evidence to rebut the presumption of regularity . . . ." *Kyhn II*, 24 Vet. App. at 236.

Having presumed that notice of the examination was mailed to Mr. Kyhn, the Veterans Court affirmed the Board's denial of Mr. Kyhn's tinnitus claim. *Id.* at 238. Mr. Kyhn then moved for rehearing and full court review,

---

[2] The other employee, Margaret Bunde stated that the VA Medical Center, rather than the RO, was tasked with mailing the veteran notice of an examination. J.A.100. However, as an employee of the RO and not the VAMC, Ms. Bunde was unable to describe how the VAMC mailed notice to veterans.

[3] The Veterans Court decision discussed herein was issued on January 18, 2011, *Kyhn II*, 24 Vet. App. at 228, after panel reconsideration of an earlier decision issued on January 15, 2010, *Kyhn v. Shinseki*, 23 Vet. App. 335 (2010) ("*Kyhn I*"). Both *Kyhn I* and *Kyhn II* affirmed the Board decision and are similar in most respects, except that *Kyhn II* more fully explains the basis for admitting the affidavits and applying the presumption of regularity.

arguing that the panel's reliance on extra-record evidence was an improper departure from Veterans Court precedent. The motion for rehearing was denied. However, Chief Judge Kasold and Judge Hagel dissented from the denial, on the ground that the full court should decide the Veterans Court's authority to "obtain and consider evidence not in the record before the agency to resolve a non-jurisdictional issue." *Kyhn v. Shinseki*, 2011 U.S. App. Vet. Claims LEXIS 1566, *1–2 (Vet. App. July 25, 2011). Mr. Kyhn filed this timely appeal.

## DISCUSSION

This court's jurisdiction to review decisions of the Veterans Court is limited by statute. Pursuant to 38 U.S.C. § 7292(a), this court has jurisdiction to review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans] Court in making the decision." Except to the extent that a constitutional issue is presented, this court may not review "a challenge to a factual determination," or "a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). The Veterans Court's legal determinations are reviewed *de novo*. *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). Mr. Kyhn's appeal raises the legal question of whether the Veterans Court acted beyond its jurisdiction when it relied on evidence not in the record before the Board and engaged in first-instance fact finding. *See Winters v. Gober*, 219 F.3d 1375, 1379 (Fed. Cir. 2000) (reviewing the legal issue of whether the Veterans Court exceeded its statutory authority).

The Veterans Court has jurisdiction "to review decisions of the Board . . . on the record of the proceedings before the Secretary and the Board." 38 U.S.C. § 7252(a), (b); *see also Henderson v. Shinseki*, 589 F.3d 1201, 1212

(Fed. Cir. 2009) *rev'd and remanded on other grounds sub nom Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197 (2011) ("[T]he Veterans Court reviews each case that comes before it on a record that is limited to the record developed before the RO and the Board."). The Veterans Court's jurisdiction to review the Board is further "limited to the scope provided in section 7261 of [Title 38]." 38 U.S.C. § 7252(b). Section 7261 allows the Veterans Court to review "questions of law de novo, questions of fact for clear error, and certain other issues under the 'arbitrary, capricious, abuse of discretion, not otherwise in accordance with law' standard." *Garrison v. Nicholson*, 494 F.3d 1366, 1368 (Fed. Cir. 2007) (quoting 38 U.S.C. § 7261(a)). Moreover, section 7261(c) makes clear that "[i]n no event shall findings of fact made by the Secretary or the Board . . . be subject to trial de novo by the [Veterans] Court." 38 U.S.C. § 7261(c). This subsection "prohibits the Veterans Court from making factual findings in the first instance."[4] *Andre v. Principi*, 301 F.3d 1354, 1362 (Fed. Cir. 2002).

### 1. The Veterans Court Considered Evidence That Was Not In the Record Before the Board

In this case, the Veterans Court's decision denying relief for Mr. Kyhn relied upon affidavits from two VA employees, neither of which was in the record before the Board. Such reliance on extra-record evidence was in

---

[4] Contrary to the dissent's position, section 7261 is relevant here even though the Board made no underlying finding of fact. By making an independent finding of fact absent an underlying factual finding by the Board, the Veterans Court both exceeds its jurisdiction to "review" the Board's decision under § 7252 *and* impermissibly engages in first-instance fact finding barred by § 7261. *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013).

contravention of the jurisdictional requirement that "[r]eview in the [Veterans] Court shall be on the record of proceedings before the Secretary and the Board." 38 U.S.C. § 7252(b).

On appeal, the Secretary argues that such reliance was permissible because "[i]t is well established that courts have discretion to take judicial notice of matters outside the record." Secretary's Br. at 18 (citing Fed. R. Evid. 201). However, to the extent the Secretary relies on Fed. R. Evid. 201 as authority for the Veterans Court's otherwise impermissible consideration of extra-record evidence, that reliance is misplaced.[5] The affidavits in this case were from a party's employees regarding otherwise unknown internal procedures. Such evidence is neither "generally known" nor "from sources whose accuracy cannot reasonably be questioned."[6] Fed. R. Evid.

---

[5]     Although the Federal Rules of Evidence are not generally applicable to the Veterans Court, the Veterans Court has relied on Fed. R. Civ. P. 201 in the past as justification for its consideration of extra-record materials. *See, e.g.*, *D'Aries v. Peake*, 22 Vet. App. 97, 105 (2008) (relying on Fed. R. Evid. 201(b) as authority to take judicial notice of a fact in DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1285 (31st ed. 2007), specifically, that "neurology is the medical specialty that deals with the nervous system").

[6]     Certain inconsistencies in Ms. Bash's affidavit confirm that her testimony was neither "generally known" nor from a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. For instance, she says the notification letters must be generated by the scheduling clerk, but later says the letters are "automatically generated." J.A.88–89. Nor does she testify to the regular procedure for mailing the letters, including whether address information is input manually or automatically or the number of business days before a letter is mailed.

201. Thus, they are not the "kinds of facts that may be judicially noticed." *Id.* (heading format modified); *see also Murakami v. United States*, 398 F.3d 1342, 1355 (Fed. Cir. 2005); *In re Kahn*, 441 F.3d 977, 990 (Fed. Cir. 2006). Nor, as the Secretary contends, are the affidavits of a party's employees similar to authorities such as VA manuals. *See Kyhn II*, 24 Vet. App. at 234 ("[W]hile VA has a written procedure for scheduling examinations that is set forth in its manuals, it does not have written instructions regarding the procedures it follows to notify a claimant of a scheduled examination."). The Veterans Court has rejected similar arguments in the past: "[The] characterization of the aforementioned materials as 'authorities' does not magically transform their status in this appeal. All of appellant's proffered supplementary materials are evidentiary in nature and, as such, may not come in through the back door by way of citation as 'supplemental authorities.'" *Godfrey v. Derwinski*, 2 Vet. App. 352, 355 (1992) (excluding television news program transcripts because "[t]hey obviously do not constitute legal authority; nor do they provide a description of 'facts not subject to reasonable dispute,'" and thus they "may not be considered in the first instance by the [Veterans] Court") (internal citations omitted). The affidavits in this case are similarly "evidentiary in nature" and may not be considered in the first instance by the Veterans Court.[7]

---

Nevertheless, she states that Mr. Kyhn's notice letter "would have been mailed out to his address of record on February 11 or 12, 2006." J.A.89.

[7]   Contrary to the dissent's analysis, Dissenting Op. at 2–3, the Veterans Court's practice of admitting applications for attorney's fees is premised on independent statutory authority in the Equal Access to Justice Act ("EAJA") and is thus inapposite to its reliance on extra-record affidavits in this case. *See* 28 U.S.C. § 2412 (providing independent authority for the Veterans

The Secretary also argues that the Veterans Court's reliance on the newly-submitted evidence was permissible because "[i]t was Mr. Kyhn who prompted the Veterans Court's inquiry into VA's procedure by asserting, for the first time, before the Veterans Court that he had not received notice of the scheduled March 2006 VA examination . . . ." Secretary's Br. at 15. If true, the fact that Mr. Kyhn failed to previously raise his lack of notice argument would be relevant to whether he waived that argument before the Veterans Court,[8] but would not authorize the Veterans Court to act outside the bounds of its jurisdiction by relying on extra-record evidence. *Cf. Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."). Thus, the Veterans Court's reliance on Ms. Bunde's and Ms. Bash's affidavits exceeded the Veterans Court's limited jurisdiction to review the Board's decision based upon the record before the Board. *See* 38 U.S.C. § 7252(b).

## 2. The Veterans Court Improperly Engaged in Fact Finding in the First Instance

The Veterans Court further erred by relying on the extra-record evidence to make a finding of fact in the first

---

Court's admission and consideration of "an application for fees and other expenses."); *see also Bazalo v. Brown*, 9 Vet. App. 304, 307–308 (1996) *rev'd on other grounds, Bazolo v. West*, 150 F.3d 1380 (Fed. Cir. 1998) (noting a statutory amendment making "the EAJA applicable to [the Veterans] Court").

[8] The Veterans Court's decision contains a half-formed waiver analysis, but does not rely upon waiver as an alternative basis for its holding. *Kyhn II*, 24 Vet. App. at 235–236. On appeal, the Secretary does not argue waiver as an alternative basis for affirmance.

instance. *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (citing *Andre*, 301 F.3d at 1362). In particular, the court found the affidavits proved "that VA does have an established procedure for notifying claimants of [VA] examinations." *Kyhn II*, 24 Vet. App. at 234. The Veterans Court explained this was not an impermissible finding of fact, because it considered the affidavits solely "[a]s part of the de novo process for determining whether the presumption of regularity attaches . . . ." *Id.* at 233–234. However, this rationale does not transform the Veterans Court's factual finding into a legal conclusion.

This case differs from other instances where the presumption of regularity was premised upon independent legal authority rather than on evidentiary findings. *See, e.g.*, *Miley v. Principi*, 366 F.3d 1343, 1346–47 (Fed. Cir. 2004) (presuming that VA officials acted consistently with their legal duty under 38 U.S.C. § 7105(b)(1) to mail the veteran notification of a rating decision); *Butler v. Principi*, 244 F.3d 1337, 1340–41 (Fed. Cir. 2001) (presuming VA officials acted consistently with their legal duty under 38 U.S.C. § 5104(a) to mail the veteran notice of appeal rights). Here, the Veterans Court weighed the affidavits to find that the VA had a regular practice of providing notice of VA examinations. This finding improperly resulted from the "evaluation and weighing of evidence" in the first instance. *Deloach*, 704 F.3d at 1380. The Veterans Court's application of the presumption of regularity to this factual finding does not convert the underlying finding into a legal conclusion.[9]

---

[9] An analogy may be helpful. There is a rebuttable presumption that a properly-addressed and mailed letter has reached its destination. *Rios v. Nicholson*, 490 F.3d 928, 930–31 (Fed. Cir. 2007). Although this presumption is a rule of law, its application is triggered by the preliminary factual findings that the

To the contrary, the Veterans Court's fact finding in the first instance exceeded its jurisdiction to review the Board based on the record before the Board. *See id.*

## CONCLUSION

The Veterans Court improperly relied upon extra-record evidence to make a finding of fact in the first instance, and, in so doing, acted outside its statutorily-granted jurisdiction to review the Board's decision based upon the record before the Board. The dissent may be correct that undertaking the proper procedure in this case would ultimately result in the same outcome and "only further delay the proceedings." Dissenting Op. at 6. Nevertheless, Congress vested the Veterans Court with limited jurisdiction, and even the weighty interests of judicial economy cannot enlarge that which a statute has directly limited.[10] Because the Veterans Court exceeded

---

letter was properly addressed and mailed. Likewise, the presumption that VA officials properly sent Mr. Kyhn notice of his examination was based on the Veterans Court's preliminary finding, based on the affidavits, that the VA had a regular practice of providing notice of VA examinations. *Cf. Routen v. West*, 142 F.3d 1434, 1440 (Fed. Cir. 1998) (citing *Weinstein's Federal Evidence* § 301.02[1], at 301–07 (2d ed. 1997); *McCormick on Evidence* § 342, at 450 (John W. Strong ed., 4th ed. 1992)) (explaining that "predicate evidence" must be established before a presumption is triggered).

[10] Although the dissent is concerned that reversal in this case could "set a standard" requiring repeated remands to the Board for factual finding, Dissenting Op. at 6, this opinion only requires that the Veterans Court follow the law confining its jurisdiction. Past decisions of this court have required the same. *See, e.g., Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (holding the Veterans Court lacked jurisdiction to engage in fact

its jurisdiction in deciding this case, its decision is vacated and remanded.[11]

## VACATE AND REMAND

---

finding in the first instance, and explaining that remand to the Board was required if there was "insufficient factual development of the record").

[11] Having granted Mr. Kyhn's requested relief, we need not decide his additional arguments that the Veterans Court's reliance on extra-record evidence violated his due process rights and right to two administrative reviews.