# United States Court of Appeals for the Federal Circuit

---

**CHARLOTTE A. BOWLING, KEVIN D. APPLING,**
*Claimants-Appellants*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-1945, 2021-1970

---

Appeals from the United States Court of Appeals for Veterans Claims in Nos. 18-5263, 19-602, Chief Judge Margaret C. Bartley, Judge Amanda L. Meredith, Judge Joseph L. Falvey, Jr.

---

Decided: June 28, 2022

---

JAMES DANIEL RIDGWAY, Bergmann & Moore, LLC, Bethesda, MD, argued for claimants-appellants. Also represented by GLENN R. BERGMANN, THOMAS POLSENO.

MEEN GEU OH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, PATRICIA M. MCCARTHY; BRIAN D. GRIFFIN, ANDREW J. STEINBERG,

Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before TARANTO, CLEVENGER, and CHEN, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Appellants Charlotte Bowling (substituting as the claimant for her deceased spouse, Charles Bowling) and Kevin Appling argued to the Court of Appeals for Veterans Claims (Veterans Court) that it should declare a longstanding regulation of the Department of Veterans Affairs (VA) to be vague on its face, in violation of the Due Process Clause of the Fifth Amendment. The Veterans Court rejected the argument. We affirm.

Mr. Bowling and Mr. Appling were discharged from military service under conditions other than honorable, and they eventually sought certain veteran's benefits. It is undisputed here that, for each former servicemember, the discharge would statutorily bar the benefits at issue unless he came within an exception applicable where an offense led to the discharge and the servicemember was "insane" at the time of the offense. 38 U.S.C. § 5303(b). A regulation, 38 C.F.R. § 3.354(a), implements the statutory insanity exception. The Board of Veterans' Appeals found the regulatory definition of "insane" not to be met either in the case of Mr. Bowling (for whom Mrs. Bowling had by then been substituted) or in the case of Mr. Appling. On appeal to the Veterans Court, appellants argued the unconstitutional vagueness of the insanity-defining regulation on its face, though not as applied to them; and in support, they asked that court to take judicial notice of material outside the record, such as a publication by advocates for veterans addressing VA actions across a range of cases over many years. The Veterans Court declined to consider the material because it had not been made part of the record before the Board and the standard for judicial notice was not met,

and the court then rejected the facial constitutional challenge. *Bowling v. McDonough*, 33 Vet. App. 385, 399–401 (2021).

In this court, appellants challenge the Veterans Court's refusal to consider the extra-record material, no longer arguing that the standard for judicial notice is met but arguing the futility of developing the record on the constitutional issue before the Board. We reject this challenge, finding no futility even if the Board could not have held the regulation unconstitutional. We also hold that appellants' facial-vagueness challenge fails on the merits.

I

A

Congress has provided that discharge "under conditions other than honorable" sometimes precludes receipt of veterans' benefits. 38 U.S.C. § 5303(a); *see also* 38 U.S.C. § 101(2) (restricting "veteran" status to person "discharged or released . . . under conditions other than dishonorable"). But it has also provided an exception if, "at the time of the commission of an offense leading to a person's court-martial, discharge, or resignation, that person was insane." *Id.* § 5303(b); *see also* 38 C.F.R. § 3.12(b). The threshold bar is not in dispute here, only the exception—specifically, its implementing regulation.

Congress did not define "insane" for purposes of § 5303(b). But since 1961, based on earlier regulations dating to the 1920s, VA has defined the term in a regulation:

> **(a) *Definition of insanity.*** An insane person is one who, while not mentally defective or constitutionally psychopathic, except when a psychosis has been engrafted upon such basic condition, **[1]** exhibits, due to disease, a more or less prolonged deviation from his normal method of behavior; or who **[2]** interferes with the peace of society; or who **[3]** has so departed (become antisocial) from the

> accepted standards of the community to which by birth and education he belongs as to lack the adaptability to make further adjustment to the social customs of the community in which he resides.

38 C.F.R. § 3.354(a) (bracketed numerals added to aid discussion *infra*). The regulation adds that a rating agency, considering an insanity claim, "will base its decision on all the evidence procurable relating to the period involved, and apply the definition" above. *Id.* § 3.354(b).

Appellants in this case did not present to the Veterans Court, and so have not presented to this court, an argument that the regulation is inconsistent with the statute, although the regulatory language does not copy the familiar formulations of the insanity defense in criminal law. *See Clark v. Arizona*, 548 U.S. 735, 747–53 (2006) (surveying various jurisdictions' formulations addressing cognitive incapacity, volitional capacity, and/or moral incapacity in the criminal-law context). Nor do appellants challenge various interpretations of this regulation. Notably, they do not dispute the Veterans Court's longstanding holdings that the "due to disease" clause (despite its placement in the text) applies equally to clauses [1], [2], and [3] and that, although the "servicemember need not show that insanity caused the misconduct that led to discharge, he or she must show medical evidence confirming insanity existed during the misconduct in question." *Bowling*, 33 Vet. App. at 398 (citing *Zang v. Brown*, 8 Vet. App. 246, 252–53 (1995), and *Gardner v. Shinseki*, 22 Vet. App. 415, 419 (2009)).

Appellants likewise do not dispute that the Board, in applying the regulation, is bound, under 38 U.S.C. § 7104(c), by a wide-ranging precedential opinion that the VA General Counsel issued in 1997 to interpret the regulation. Veterans Affairs Opinion of General Counsel Prec. 20-97, 1997 WL 34674474 (May 22, 1997) (*1997 GC Opinion*). That opinion states that the regulation's opening exclusion of the "constitutionally psychopathic" refers to "a

condition which may be described as an antisocial personality disorder" under the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (in its fourth edition—DSM-IV—in 1997), which is therefore excluded from the regulation's coverage. *1997 GC Opinion* ¶ 3. Turning to the central "due to disease" phrase, it then explains that "a determination as to whether a particular condition may be considered a disease for compensation purposes is essentially an adjudicative matter to be resolved by adjudicative personnel based on accepted medical principles." *Id.* ¶ 5. The opinion also calls for interpretation of the regulation's terms "in light of the commonly accepted meaning of the term" being defined, *i.e.*, "insanity." *Id.* ¶ 6. Based on those standards, and relying on general and medical dictionaries as well as DSM-IV's identification of conduct "generally attributable to a substance-abuse disorder," the opinion concludes that such conduct does not qualify under the regulation, *id.* ¶¶ 5–6, because (as the opinion summarizes) it "does not exemplify the severe deviation from the social norm or the gross nature of conduct which is generally considered to fall with[in] the scope of the term insanity," *id.* at *7 (holding b).

Evidently interpreting clause [1] of the regulation, the opinion then points to the regulatory history dating to the 1920s as well as Veterans Court precedents to conclude that "a minor episode or episodes of disorderly conduct or mere eccentricity would not constitute insane behavior for purposes of" the regulation. *Id.* ¶¶ 7–8. As to "how significantly an individual's behavior must deviate from his or her normal method of behavior" to come within clause [1], the opinion says that this remains "a question of fact to be resolved by the factfinder based on consideration of the circumstances of the particular case," evaluated in light of the "principles discussed above governing the gross nature of conduct which is generally considered to fall within the scope of the term insanity." *Id.* ¶ 9 (citing two circuit

courts' recognition of varying circumstances). The opinion goes on to provide interpretations of clauses [2] and [3]. *Id.* ¶¶ 10–16.

B

Appellant Charlotte Bowling pursues a claim as the surviving spouse of Charles Bowling; appellant Mr. Appling pursues his own claim. Both Mr. Bowling and Mr. Appling were servicemembers who were discharged from military service under conditions other than honorable. For Mr. Bowling, who served in the Marine Corps during two periods from 1961 to 1970, the precipitating offense, after other misconduct, was being absent without leave for months after a tour in Vietnam. For Mr. Appling, who served in the Army from 1979 to 1981, the relevant conduct included certain charged offenses and other misconduct.

As relevant here, when Mr. Bowling and Mr. Appling sought certain veteran's benefits, they invoked § 3.354(a) to try to surmount the barrier presented by the character of their discharges. Mr. Bowling submitted opinions from two private clinical psychologists opining that he had post-traumatic stress disorder from his Vietnam service at the time he went absent without leave. Mr. Appling described his misconduct as the result of depression resulting from racial harassment during service and, at least in part, from alcoholism that began during basic training.

The Board of Veterans' Appeals ruled that neither Mr. Bowling nor Mr. Appling came under the regulation, relying on the *1997 GC Opinion*, and so denied them benefits. The Board found that Mr. Bowling had not established a psychiatric disability that caused conduct covered by clauses [1] and [3], that alcohol abuse did not suffice, and that there was no evidence of conduct coming under clause [2]. J.A. 229–31. The Board found that Mr. Appling did not establish a psychiatric disorder and that alcoholism, invoked by Mr. Appling, did not suffice. J.A. 305–06.

Appellants appealed to the Veterans Court, which, given the arguments presented, consolidated the appeals. Appellants made no case-specific challenges to the application of the regulation to their cases or to the statutory validity of the regulation or to the constitutionality of the regulation as applied to their cases. Rather, they argued that § 3.354(a) was on its face vague, in violation of the Due Process Clause, and they requested class treatment. *Bowling*, 33 Vet. App. at 394–95. Appellants asked the Veterans Court to take judicial notice of extra-record material that they characterize (in this court) as "reports, historical material, and scholarly articles," *see* Bowling Opening Br. at 12, to purportedly show the arbitrary and capricious application of the regulation over time and, hence, the regulation's facial vagueness, *see Bowling*, 33 Vet. App. at 398–400. One submission featured by appellants was a publication prepared by the Veterans Legal Clinic, Services Center of Harvard Law School, with the cooperation of Swords to Plowshares and the National Veterans Legal Services Program, *Underserved: How the VA Wrongfully Excludes Veterans with Bad Paper* (2016), cited at *Bowling*, 33 Vet. App. at 399. The Veterans Court explained that the publication includes certain "statistics as to the percentage of character of discharge findings that service was dishonorable broken down by [regional office] and by Board member" over certain periods. *Id.*

The Veterans Court was unpersuaded. It recognized the strong rule that its review is limited to the record made before the Board. *Id.* (citing 38 U.S.C. § 7252(b)). And the court denied appellants' request to take judicial notice of the extra-record material, explaining that appellants "do not rely on this evidence to establish facts not subject to reasonable dispute," but rather "ask the Court to take judicial notice of the evidence and then draw inferences from it to support their arguments." *Id.* The Veterans Court noted that appellants offered the material to argue that the regulation had been applied inconsistently within VA (at

the Board and regional-office levels), the inconsistencies were caused by the imprecision of the regulation, and the regulation was therefore unconstitutionally vague. *Id.* at 399–400. The court explained that the standard for judicial notice was not met by appellants' argument about "such a relationship" between applications and imprecision being "suggest[ed]" or "strongly indicate[d]." *Id.*

With the extra-record material excluded, the court rejected the facial-vagueness challenge. It reasoned that appellants had "not demonstrated that VA is incapable of applying § 3.354(a) or that the regulation fails to provide fair notice of the factors by which insanity may be established, except by way of speculation based on the extra-record opinion evidence that the Court may not consider." *Id.* at 400. It also invoked Supreme Court precedent suggesting a need to show vagueness in all applications to support a facial challenge, *id.* (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)), while recognizing a possible exception when there is "'pervasive disagreement'" about a provision's meaning, *id.* at 400 n.7 (quoting *Johnson v. United States*, 576 U.S. 591, 601 (2015)).[1]

Appellants timely appealed. They contend that the Veterans Court erred in declining to consider the extra-record material and in rejecting their facial-vagueness challenge. A premise of their argument is that the material is

---

[1]    The Veterans Court also rejected appellants' request for class certification, explaining that the precedential force of any ruling on facial vagueness is sufficient to deny resort to the extraordinary tool of a class action. *Id.* at 391–94. Appellants challenge that ruling in this court, but they do not dispute that we need not reach the class-certification issue if we hold, as we do, that the Veterans Court properly rejected the vagueness claim. *See* Bowling Opening Br. at 48–49.

important to the assessment of the facial-vagueness challenge.

## II

This court's jurisdiction to review decisions of the Veterans Court is limited. 38 U.S.C. § 7292. We have jurisdiction to decide an appeal insofar as it presents a challenge to a Veterans Court's decision regarding a rule of law, including a decision about the interpretation or validity of any statute or regulation. *Id.* § 7292(a), (d)(1). Except to the extent that an appeal presents a constitutional issue, we do not have jurisdiction to review a challenge to a factual determination or a challenge to the application of a law or regulation to the facts of a particular case. *Id.* § 7292(d)(2). We review de novo statutory and regulatory interpretations of the Veterans Court. *Gazelle v. Shulkin*, 868 F.3d 1006, 1009 (Fed. Cir. 2017).

## A

We first consider the Veterans Court's refusal to consider the extra-record material presented by appellants.

The Veterans Court's task, under the statute, is "to review decisions of the Board." 38 U.S.C. § 7252(a). More specifically, "[r]eview in the [Veterans] Court shall be on the record of proceedings before the Secretary and the Board." *Id.* § 7252(b). The point is reinforced by the further declaration that review "shall be limited to the scope provided in section 7261 of this title." *Id.* Section 7261, after setting out the scope of Veterans Court review of Board decisions, *id.* § 7261(a), provides that "[i]n making the determinations under subsection (a), the [Veterans] Court shall review the record of proceedings before the Secretary and the Board . . . pursuant to section 7252(b)," while taking "due account of" the rule of prejudicial error and of the Secretary's application of the benefit-of-the-doubt rule of § 5107(b). *Id.* § 7261(b). Those provisions generally confine the Veterans Court to the record made

before the matter arrives at that court, as the Veterans Court here recognized. *Bowling*, 33 Vet. App. at 399 ("[A]s a general rule, the Court is precluded from considering any material that is not contained in the record before the Board."); *see Tadlock v. McDonough*, 5 F.4th 1327, 1335–36 (Fed. Cir. 2021); *Euzebio v. McDonough*, 989 F.3d 1305, 1318 (Fed. Cir. 2021); *Kyhn v. Shinseki*, 716 F.3d 572, 575, 578 (Fed. Cir. 2013).[2]

The present case, unlike *Euzebio*, does not involve material that was "constructively" part of the record as the matter arrived at the Veterans Court. 989 F.3d at 1318–19. Nor does it involve material that merely documents a conceded fact. *See AZ v. Shinseki*, 731 F.3d 1303, 1312 (Fed. Cir. 2013) (citing extra-record reports documenting the undisputed fact that most sexual assaults in the military are unreported). Nor, at this stage, does it involve an argument for consideration of extra-record material (on a contested fact) based on judicial notice: Although appellants relied on judicial notice in the Veterans Court, that court held the material not to qualify for judicial notice, and appellants have not challenged that holding here.

Appellants argue, instead, that the Veterans Court was required to consider the material at issue because it would

---

[2]    The statutory rule about the record is reinforced by a statutory rule about fact-finding by the Veterans Court. 38 U.S.C. § 7261(c) provides: "In no event shall findings of fact made by the Secretary or the Board of Veterans' Appeals be subject to trial de novo by the Court." That provision, we have ruled, "prohibits the [Veterans C]ourt from making factual findings in the first instance." *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013); *see Elkins v. Gober*, 229 F.3d 1369, 1377 (Fed. Cir. 2000) ("Fact-finding in veterans cases is to be done by the expert [Board], not by the Veterans Court."); *Tadlock*, 5 F.4th at 1335–38 (discussing rule in context of prejudicial-error analysis).

have been futile, as a matter of law, for them to have submitted such evidence to the Board.  We do not deem this contention forfeited, even though appellants may have made the point to the Veterans Court only at oral argument to that court: The issue is readily decided without more development, and the argument is "essentially consistent with" the formulations appellants presented in briefing to the Veterans Court, *Singleton v. Shinseki*, 659 F.3d 1332, 1334 n.2 (Fed. Cir. 2011).  But we reject the contention, accepting for this purpose the assumption—pressed by appellants—that the material at issue is important to assessing the facial-vagueness challenge.

In arguing that it would have been futile for them to develop a facial-vagueness record before the Board, appellants borrow from the doctrines that sometimes require exhaustion of administrative remedies, although only record expansion, not issue or remedy exhaustion, is at issue.  After all, allowing an agency "to make a factual record" is one function of exhaustion requirements.  *See Parisi v. Davidson*, 405 U.S. 34, 37 (1972) (explaining that exhaustion enables "an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies").  "Parties are not required to perform useless acts to exhaust administrative remedies." *George E. Warren Corp. v. United States*, 341 F.3d 1348, 1351 (Fed. Cir. 2003).  Appellants contend that it would have been futile to present evidence of facial unconstitutionality to the Board, as the Board lacks jurisdiction to find regulations unconstitutional.  Appellants ask us to hold generally that "[t]here is no requirement to present evidence to the Board that pertains only to a constitutional issue, which the Board will not address."  Bowling Opening Br. at 17.

We have rejected this argument.  In *Ledford v. West*, 136 F.3d 776 (Fed. Cir. 1998), we held that the Board's inability to invalidate a challenged VA measure on

constitutional grounds does not necessarily, and in that
case did not, support a futility excuse for failing to raise a
constitutional challenge before the Board.  The Board, re-
lying on a VA-issued "circular," terminated benefits that
Mr. Ledford, a veteran, had been receiving.  *Id.* at 778.  Ap-
pealing to the Veterans Court, the veteran newly argued
that the circular violated his due process rights because it
conflicted with a VA regulation requiring clear and con-
vincing evidence to reduce certain benefits.  *Id.* (citing 38
C.F.R. § 3.343(c) (1997)).  The veteran maintained that his
constitutional argument was not forfeited because "the
Board [is] bound to follow VA circulars, regardless of their
validity, and therefore . . . challenging the legality of the
Circular at the agency stages of the veterans' benefits re-
view process would have been futile."  *Id.* at 778–79.  We
rejected this futility argument, explaining:

> The Supreme Court has stated that "[t]he basic
> purpose of the exhaustion doctrine is to allow an
> administrative agency to perform functions within
> its special competence—to make a factual record,
> to apply its expertise, and to correct its own errors
> so as to moot judicial controversies." *Parisi v. Da-*
> *vidson*, 405 U.S. 34, 37 (1972).  The application of
> the doctrine is "intensely practical" and is to be ap-
> plied when further agency consideration concern-
> ing an issue would further the doctrine's
> underlying policies. *Bowen v. City of New York*, 476
> U.S. 467, 485 (1986).  Ledford's assertion that the
> agency cannot invalidate the Circular does not re-
> lieve him of the obligation of presenting his consti-
> tutional and APA challenges to the agency.  A lack
> of agency power to provide a remedy concerning is-
> sues beyond its charter does not necessarily relieve
> a claimant from presenting those issues to an
> agency as part of a challenge to an agency decision.

*Id.* at 780 (Supreme Court citations limited to official re-
port).

We recently relied on *Ledford*'s reasoning to reject a similar futility argument in *Wolfe v. McDonough*, 28 F.4th 1348, 1358 (Fed. Cir. 2022). The veteran in *Wolfe* challenged a regulation that governed reimbursement for outside emergency medical care as contrary to statute. *Wolfe v. Wilkie*, 32 Vet. App. 1, 11 (2019). The Veterans Court excused the veteran's failure to present the challenge to the Board, reasoning that "disputing the regulation's validity within the administrative appeals process amounts to 'a useless act' and would be futile because the Board doesn't have jurisdiction to invalidate the regulation." *Id.* at 39. We reversed, explaining: "The fact that the Board could not address the issue does not mean that the appeals process is futile. In considering an individual case, the Veterans Court and this court can consider a regulation's validity." *Wolfe*, 28 F.4th at 1358 (first citing 38 U.S.C. §§ 7261(a)(3), 7292; and then citing *Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993)).

Based on those authorities, we hold that, even if the Board could not grant appellants their requested relief of declaring § 3.354(a) unconstitutionally vague, presenting such evidence to the Board would not be futile. Here, on the assumption that the submitted evidence is relevant to the facial-vagueness challenge, as appellants insist, submitting the extra-record evidence to the Board would hardly have been pointless for purposes of later judicial review. Whether on its own or with assistance from inside or outside the agency, the Board could, for example, have provided analyses of the empirical information appellants submitted and developed other, perhaps contrary, empirical information it thought likely to be useful for the ultimate resolution of the constitutional issue by the Veterans Court and this court. Notably, the *Underserved* statistics themselves, as the Veterans Court's opinion indicates, could benefit from careful scrutiny and possible supplementation. In refusing to take judicial notice of those statistics, a refusal not challenged here, the Veterans Court

14                                                    BOWLING v. MCDONOUGH

concluded that the statistics at most created disputes about what the VA actions across cases fairly showed about insufficiency of the regulation's standards to guide claimants' choices about presentation of evidence and to constrain truly disparate and arbitrary decision-making—in a system in which, in general, only decisions unfavorable to veterans have gotten judicially reviewed, *see* 38 U.S.C. § 7252(a) ("The Secretary may not seek review of any [Board] decision."). Even if the Board could not have declared the regulation unconstitutional, the Board could have performed at least record-development functions, as well as associated fact-finding functions.

Because it would not have been futile for appellants to raise their constitutional challenge before the Board, appellants have not shown that futility justified their failure to present to the Board the factual material they sought to add to the basis of adjudication when they appealed to the Veterans Court. And they have supplied no other ground for upsetting the Veterans Court's refusal to consider the extra-record evidence. We therefore affirm that determination by the Veterans Court.

B

The Veterans Court held that, with the rejected extra-record material set aside, appellants had not established facial vagueness of the challenged regulation. We agree.

In so concluding, we accept *arguendo*, without adopting as correct, certain assumptions underlying the challenge. One is that the constitutional standards for avoiding vagueness demand the same in this case, which involves an exception to a bar to government benefits protected by the Due Process Clause, as they do in a case involving criminal punishment. Another is that the requirements central to vagueness doctrine—provision of "fair notice" to "ordinary people" and avoidance of "invit[ing] arbitrary enforcement," *Johnson*, 576 U.S. at 595; *see FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)—include a

requirement of adequate clarity about what evidence is relevant in adjudicating application of a challenged law in a particular case.[3]  We note, too, that it is undisputed that this case does not call for application of heightened vagueness protections associated with speech or other conduct subject to independent substantive constitutional protection.  *See Kolender v. Lawson*, 461 U.S. 352, 358–59 (1983); *Parker v. Levy*, 417 U.S. 733, 759 (1974); *United States v. Requena*, 980 F.3d 30, 39 (2d Cir. 2020).  On these premises, we see at least two decisive deficiencies in appellants' case.

First, with no help from the extra-record statistics-focused material, appellants have made no substantial case for the insufficient clarity of the governing regulatory standards—which include the accepted and binding interpretations summarized above.  The standards incorporate, for example, references to objectively describable conduct (such as a "prolonged deviation from [the individual's own] normal behavior"), to "diseases," and to causation ("due to").  And the authoritative General Counsel opinion provides several specific rules for frequently arising situations (*e.g.*, those involving substance abuse) and also makes clear the significance of DSM medical standards to application of the disease and causation requirements, as well as the importance of customary notions of "insanity" applied in criminal law.  Appellants have not walked through these governing principles, explained and analyzed the

---

[3]    Appellants do not focus on whether they had uncertainty about whether they could engage in the conduct that led to their discharges, but on the asserted insufficiency of the regulation's standards to avoid arbitrary application and to inform them (or their representatives and mental-health experts) what proof is important for meeting the standards in a Board (or initial VA) proceeding.  *See* Bowling Opening Br. at 28.

uncertainties, and shown their insufficiency, in part or in whole.  Importantly, it is not enough for vagueness "that close cases can be envisioned." *United States v. Williams*, 553 U.S. 285, 305 (2008).  "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.* at 306.

Appellants have not made such a showing.  They have not furnished anything like the kind of focused analysis of particular language found in cases such as *Johnson*, 576 U.S. at 597–602.  They have not grappled with the inherent nature of the subject matter, including the application of familiar general concepts of human behavior to diverse circumstances, aided by accepted medical standards and widely used legal standards, and shown that the regulations as interpreted leaves an undue amount of uncertainty given that subject matter.  *See Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (regulations may incorporate "flexibility and reasonable breadth, rather than meticulous specificity" (citation omitted)); *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340 (1952) (standards may suffice even if justifiably written to "deal with untold and unforeseen variations in factual situations").  Nor have appellants shown a fact that was important to *Johnson*'s analysis, confirming what its focused analysis of particular uncertainties showed, namely, that there was "pervasive disagreement [among adjudicators applying the provision at issue] about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider."  576 U.S. at 601; *see Bowling*, 33 Vet. App. at 400 n.7 (noting this aspect of *Johnson*).

We therefore agree with the Veterans Court's conclusion that appellants' case for vagueness is inadequate because appellants have "not demonstrated that VA is incapable of applying § 3.354(a) or that the regulation fails to provide fair notice of the factors by which insanity may

be established, except by way of speculation based on the extra-record opinion evidence that the Court may not consider." *Bowling*, 33 Vet. App. at 400. This basis for the Veterans Court's ruling, we note, does not depend on the principle, reflected in the *Salerno* decision and other Supreme Court decisions, that, outside the First Amendment context, a person arguing for facial vagueness must show vagueness in all applications of the challenged provision. The extent to which that principle remains sound after *Johnson* therefore need not be addressed.[4]

Second, a longstanding principle of vagueness law independently bars appellants' facial challenge—namely, that a person to whom a law is not vague *as applied* to that person's situation cannot assert facial vagueness. *See Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1151–52 (2017) (applying principle even in the First Amendment context: "[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim." (citation omitted)); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) ("[A] plaintiff who engages in some

---

[4] *Johnson* and the successor case of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), raise a question about the continuing scope of the *Salerno* principle, stating that a provision may be void for vagueness even though "some conduct . . . clearly falls within the provision's grasp," *Johnson*, 576 U.S. at 602; *see Dimaya*, 138 S. Ct. at 1214 n.3; *Requena*, 980 F.3d at 40–42. Under the *Salerno* principle, 38 C.F.R. § 3.354(a) would pass muster against the facial-vagueness challenge, as there indisputably are situations that clearly come within the regulation, such as a case of newly appearing schizophrenia causing radical, persistent change in behavior. *See, e.g.*, (*Title Redacted by Agency*), No. 20-26 785, 2021 WL 3239801 (Bd. Vet. App. June 4, 2021); (*Title Redacted by Agency*), No. 06-34 906, 2013 WL 2104886 (Bd. Vet. App. Mar. 20, 2013).

conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." (citation omitted)); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) (same as *Holder* quote); *see also Williams*, 553 U.S. at 304; *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *Parker*, 417 U.S. at 756. This principle is distinct from the *Salerno* principle: It links a facial challenge to an as-applied challenge, not to the universe of possible applications. And the principle applies here because appellants have not challenged § 3.354(a) as applied to them.

This principle survives *Johnson*, as well as *Dimaya*, which did not add anything to *Johnson* relevant here. *See United States v. Hasson*, 26 F.4th 610, 616–21 (4th Cir. 2022); *see also Requena*, 980 F.3d at 39–43; *Kashem v. Barr*, 941 F.3d 358, 376 (9th Cir. 2019) ("*Johnson* and *Dimaya* did not explicitly question the rule that a litigant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge."). As just noted, the Supreme Court relied on this principle in *Expressions Hair Design*, after *Johnson*. *See* 137 S. Ct. at 1151–52. And the Court in *Johnson* did not call this principle into question; nor did the Court do so in *Dimaya*.[5] And on their distinctive facts, moreover, neither case involved a statute that was clear as to the challenger. Rather, both involved a situation in which each application of the statute depended on a *category* assessment of an

---

[5]   In *Dimaya*, Justice Thomas, in dissent, noted that the Supreme Court's precedents "recognize that, outside the First Amendment context, a challenger must prove that the statute is vague as applied to him" to succeed in a facial-vagueness challenge. 138 S. Ct. at 1250 (Thomas, J., dissenting). The majority, while disagreeing with another point made in dissent, did not disagree with that point. *Id.* at 1214 n.3.

"idealized ordinary case," where judicial experience had shown that assessment to be governed by fatally vague standards. *Johnson*, 576 U.S. at 597, 604; *see also Dimaya*, 138 S. Ct. at 1211, 1216. This feature made the statute vague in *each* application. The Court in *Johnson* stressed this feature as "critical[]" to its vagueness analysis, distinguishing other cases rejecting vagueness challenges, *Johnson*, 576 U.S. at 597; *id.* at 603–04, and *Dimaya* relies directly on *Johnson* and its "categorical approach." 137 S. Ct. at 1213–18; *see Requena*, 980 F.3d at 42 (stressing categorical approach as central to *Johnson* and *Dimaya*); *see also United States v. Davis*, 139 S. Ct. 2319, 2325–27 (2021) (same in reaching similar result for another statute).

The regulation at issue here, unlike the laws at issue in *Johnson* and *Dimaya*, does not call for a categorical approach to interpretation. It does not require an adjudicator to ask if an imagined ordinary case (*e.g.*, of bipolar disorder, if that is the claimant's condition) qualifies as insanity under the regulation, but rather requires a focus on "all the evidence procurable relating to the period involved" for the particular claimant. 38 C.F.R. § 3.354(b). Appellants' facial vagueness challenge thus fails because they have not argued or shown vagueness as applied to them. This failure of their facial vagueness challenge is independent of whether appellants were entitled to have the Veterans Court consider the extra-record material at issue.[6]

---

[6] To the extent that appellants seek modification of the regulation, an evident avenue to pursue that goal is to file with VA a petition for rulemaking under 5 U.S.C. § 553(e), and, if necessary, to seek judicial review in this court, under 38 U.S.C. § 502, of VA action on the petition. *See Preminger v. Sec'y of Veterans Affairs*, 632 F.3d 1345, 1353 (Fed. Cir. 2011).

### III

For the foregoing reasons, we affirm the judgment of the Veterans Court.

The parties shall bear their own costs.

**AFFIRMED**