NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FREEMAN W. STANTON,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-2224

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 21-2636, Judge Coral Wong Pietsch.

---

Decided: April 7, 2023

---

FREEMAN W. STANTON, Deer Lodge, MT, pro se.

DANIEL BERTONI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY; CHRISTOPHER O. ADELOYE, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————

Before REYNA, BRYSON, and TARANTO, *Circuit Judges*.

PER CURIAM.

Freeman W. Stanton, while on active duty in the Air Force in 1971, went absent without leave (AWOL), first for 7 days and again for 59 days.  After his second AWOL period, Mr. Stanton received an "undesirable discharge."  In January 1972, he applied for a discharge upgrade, but the Air Force Discharge Review Board denied the request in March 1972.  Mr. Stanton later filed with the Department of Veterans Affairs (VA) claims for compensation for "spine disabilities" and a "mental disability."  The relevant VA regional office denied his claims.  So did the Board of Veterans' Appeals.  Mr. Stanton then appealed the Board decision to the Court of Appeals for Veterans Claims (Veterans Court), which vacated the Board's decision and remanded.  On remand, the Board again denied Mr. Stanton's claims; the Veterans Court then affirmed the Board's decision.  *Stanton v. McDonough*, No. 21-2636, 2022 WL 2447466 (Vet. App. July 6, 2022).  We now affirm.

I

Mr. Stanton served on active duty in the Air Force from July 6, 1971, to December 2, 1971.  He went AWOL for 7 days in July 1971 and for 59 days from August through October 1971.[1]  After his first AWOL period, Mr. Stanton was ordered into correctional custody for 7 days.  After his second AWOL period, the Air Force charged him (on November 12, 1971) with violating the Uniform Code of Military

————————

[1]    A number of minor differences in the dates and counts of days of the AWOL periods appear in the record.  For purposes of this appeal, and without making our own findings (on a factual matter), we accept the dates and counts stated by Mr. Stanton.  *See* Mr. Stanton's Br. at 4.

Justice, Article 86, and referred him for trial by court-martial. The same day, he requested a discharge for the good of the service.

In a statement submitted with his request, Mr. Stanton explained that, from "January 1971, until [he] entered the service, [he] used LSD about five or six times." SAppx. 39. He added that, "under present regulations," he "would not have been accepted . . . based on the fact that those in the service with pre-service drug use are eligible for either an honorable or general discharge" and "request[ed] that [he] be given general discharge." *Id.* He also stated that "Mental Hygiene Service has said [he] could be discharged for a character and behavior disorder: emotionally unstable personality based on drug use." *Id.* Notwithstanding these statements, Mr. Stanton acknowledged that his "request for discharge, if approved, may result in receiving an undesirable discharge under conditions other than honorable." SAppx. 38.

On November 17, 1971, the Assistant Chief of Mental Hygiene Services, by letter, stated that Mr. Stanton was evaluated psychiatrically by the service and "recommended that [Mr. Stanton] be administratively separated from the United States Air Force." SAppx. 40. The letter states that Mr. Stanton "does not have any psychiatric disease or condition which would warrant separation from the service" but that if Mr. Stanton continued in training "his present problem will, in [the Mental Hygiene Service's] opinion continue and might develop into a major psychiatric illness." *Id.* The letter "diagnos[es]" Mr. Stanton as having an "[e]motionally unstable personality manifested by use of LSD, general inadaptability, and uncontrolled hostility." *Id.*

On December 2, 1971, the Air Force issued an "undesirable discharge" of Mr. Stanton. SAppx. 41. In January 1972, Mr. Stanton applied for a discharge upgrade, from

"Undesirable to Honorable." SAppx. 42. The Air Force Discharge Review Board denied the request in March 1972.

Four decades later, in September 2015, Mr. Stanton filed with VA a claim for compensation for "spine disabilities" and a "mental disability." SAppx. 45–46. The relevant VA regional office denied Mr. Stanton's claims, determining that his discharge was "Undesirable/Other Than Honorable Conditions" due to "willful and persistent misconduct," so he was not entitled to "VA gratuitous benefits under 38 CFR 3.12(d)(4)." SAppx. 47. Mr. Stanton filed a notice of disagreement, in which he contended, among other things, that he was discharged for medical reasons, as opposed to "punitive" reasons, SAppx. 53, suggesting that his conduct was not "willful and persistent." For support, he provided school records (a report card and a psychological report) that, he contended, demonstrate "a pre-existing mental birth condition of mental retardation" and "a mental birth defect." SAppx. 54 (capitalization removed); *see also* SAppx. 57; SAppx. 58. The regional office maintained its denials in a statement of the case, determining that the discharge was "other than honorable" and "based on willful and persistent misconduct" and that "[i]nsanity is not determined to be at issue." SAppx. 61–62.

Mr. Stanton appealed to the Board, and he included in his appeal a report by a medical advisor for the Air Force Board for the Correction of Military Records from March 2016. The medical advisor "opine[d]" that "the Board may consider an upgrade of discharge to General, under Honorable Conditions, based upon Clemency and his possible *unsuitability* for service entry." SAppx. 70 (emphasis in original). The Board, in a January 2019 decision, maintained the denials, determining, among other things, that Mr. Stanton was not "insane at the time of the misconduct that led to his discharge" and that he had "not provided medical evidence of psychiatric or psychological treatment

for insanity." SAppx. 72 (Veterans Court decision quoting the Board decision).[2]

Mr. Stanton then appealed the Board decision to the Veterans Court, which vacated the decision and remanded. The Veterans Court determined that the Board "either vaguely or did not at all address several pieces of evidence and argument" that are "potentially relevant" to whether Mr. Stanton "is entitled to the relief that he seeks." SAppx. 72–73. On remand, Mr. Stanton submitted a March 2018 report from an unnamed psychologist, who recommended in the report that the Air Force "change his discharge summary to Entry Level Separation and his service characterization to Uncharacterized but deny granting his request for an Honorable discharge." SAppx. 78.

The Board again maintained the denial of Mr. Stanton's claims for disability benefits. The Board determined that Mr. Stanton's second absence without leave constituted willful and persistent misconduct under 38 C.F.R. § 3.12(d)(4), stating that, in light of his "previous nonjudicial punishment" for his first AWOL period, the second absence without leave was "deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences." SAppx. 83. The Board next determined that Mr. Stanton's misconduct did not fall within the exception for minor offenses where service "was otherwise honest, faithful, and meritorious" because it was "an offense triable by court martial and punishable by confinement and the issuance of a punitive discharge." SAppx. 83–84. The Board also determined that Mr. Stanton was not insane at the time of his second AWOL period, so he did not come within the insanity exception stated in 38 C.F.R. § 3.12(b), as defined by 38 C.F.R. § 3.354(a). SAppx. 87–88. The Board stated that his

---

[2] The January 2019 Board decision is not in the appellate record before us.

"intellectual deficit and personality disorder" reported in 1971 "is not a disease for VA compensation purposes" and thus "does not satisfy the definition of insanity under 38 C.F.R. § 3.354(a)." SAppx. 88. Lastly, the Board determined that Mr. Stanton cannot seek relief under the "compelling circumstances" exception of a different provision barring benefits for discharges based on certain misconduct, 38 C.F.R. § 3.12(c)(6), because the provision and its exception only apply to persons discharged based on AWOL periods of at least 180 days and not to persons discharged based on Mr. Stanton's shorter AWOL periods. SAppx. 88–89.

The Veterans Court, following Mr. Stanton's post-remand appeal, affirmed the Board's decision. The Veterans Court agreed with the Board's determination that Mr. Stanton's conduct fell within § 3.12(d)(4) and not § 3.12(c)(6), noting that the latter applies only to discharges based on AWOL periods of at least 180 days. *Stanton*, 2022 WL 2447466, at *7. Likewise, the Veterans Court determined that the Board did not err in finding that Mr. Stanton's second AWOL offense constituted willful and persistent misconduct and was not a minor offense. *Id.* at *8–11. In particular, the Veterans Court noted that none of the evidence cited by Mr. Stanton—the March 2016 report, the May 2018 report, and the school records—constitutes evidence that Mr. Stanton unintentionally went AWOL for a second time. *Id.* at *9–11. The Veterans Court then determined that the Board did not err in finding that Mr. Stanton was not insane at the time of his second AWOL period. *Id.* at *11–15. The Veterans Court specifically rejected Mr. Stanton's interpretation of "insane" as inconsistent with 38 C.F.R. § 3.354(a), determined that the

Board addressed all the relevant evidence,[3] and agreed with the Board's finding that Mr. Stanton "was not insane as a result of a 'disease' as defined by VA regulation." *Id.*

The Veterans Court entered final judgment on August 9, 2022, and Mr. Stanton timely appealed on August 30, 2022.

## II

We have jurisdiction over Mr. Stanton's appeal under 38 U.S.C. § 7292 to "decide all relevant questions of law," but we lack jurisdiction to review "a challenge to a factual determination" or "a challenge to a law or regulation as applied to the facts of a particular case," "[e]xcept to the extent that an appeal . . . presents a constitutional issue." 38 U.S.C. § 7292(d). We decide those questions of law de novo. *See Van Dermark v. McDonough*, 57 F.4th 1374, 1377 (Fed. Cir. 2023).

## A

In Title 38 of the U.S. Code, the term "veteran" is limited to one "who served in the active military, naval, air, or space service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C. § 101(2). Entitlement to compensation for disabilities related to service is limited to any such "veteran"—indeed, to a subset of such veterans: The veteran must have been "discharged or released under conditions other than

---

[3]    The Veterans Court noted that the Board did not specifically address particular statements in Mr. Stanton's school records, but the court noted that the Board did review the records and presumably considered the statements at issue. *Stanton*, 2022 WL 2447466, at *14. The court also determined that, at any rate, nothing in the "school report card could possibly constitute favorable medical evidence of a diagnosis of a" required disease. *Id.*

dishonorable from the period of service" relevant to the disability at issue. *Id.* § 1110 (for service during periods of war); *id.* § 1131 (for service not during periods of war).

When a former service member is discharged under honorable conditions, VA must accept the character of the discharge as honorable, without independently determining the character of the former service member's discharge. 38 C.F.R. § 3.12(a). But for other discharges, when presented with a claim for disability benefits, VA may independently review the character of the discharge to determine whether the discharge was under "dishonorable" conditions or under conditions that nevertheless result in a bar to disability benefits. *See Robertson v. Shinseki*, 26 Vet. App. 169, 175 (2013) (describing VA's practice, as provided in the VA Adjudication Procedures Manual, of undertaking "a formal character of discharge determination" in such circumstances), *aff'd sub nom. Robertson v. Gibson*, 759 F.3d 1351 (Fed. Cir. 2014); *see also* VA Adjudication Procedures Manual, X.iv.1.A.1.e. (last updated Feb. 3, 2023).

In conducting a character-of-discharge review, VA looks to 38 U.S.C. § 5303 and 38 C.F.R. § 3.12. The statutory provision enumerates certain bars to benefits, including certain bars applicable to discharges "under conditions other than honorable," and then states an insanity exception to the "preclu[sion] from benefits under laws administered by the Secretary based upon the period of service from which such person was separated." 38 U.S.C. § 5303(a)–(b). The statute also contains a special provision addressing certain discharges "under conditions other than honorable" based on "an absence without authority from active duty for a continuous period of at least one hundred and eighty days," unless the Secretary finds "compelling circumstances to warrant such prolonged unauthorized absence." *Id.* § 5303(a).

A VA regulation, 38 C.F.R. § 3.12, implements at least 38 U.S.C. §§ 101(2), 1110, 1131, and 5303. It delineates two main categories of bars to disability benefits. First, mirroring the language of 38 U.S.C. § 5303(a), subsection (c) of the regulation identifies discharge conditions that result in a bar to disability benefits, including a "discharge under other than honorable conditions issued as a result of an absence without official leave (AWOL) for a continuous period of at least 180 days" unless "there are compelling circumstances to warrant the prolonged unauthorized absence." 38 C.F.R. § 3.12(c)(6). Subsection (d) of the regulation separately provides a list of discharges that are "considered to have been issued under dishonorable conditions" and thus result in a bar to disability benefits. *Id.* § 3.12(d). One such category of discharges, at issue here, covers discharges for "[w]illful and persistent misconduct." *Id.* § 3.12(d)(4). Section 3.12(d)(4) further provides that this category "includes a discharge under other than honorable conditions, if it is determined that it was issued because of willful and persistent misconduct" but that "[a] discharge because of a minor offense will not, however, be considered willful and persistent misconduct if service was otherwise honest, faithful and meritorious." *Id.* Subsection (b) of the regulation provides an exception, applicable to all the discharge conditions described in § 3.12, for former service members found to have been "insane at the time of committing the offense causing such discharge or release or unless otherwise specifically provided [by 38 U.S.C. § 5303(b)]." *Id.* § 3.12(b).

Although Congress did not define "insane" for purposes of § 5303(b), VA has defined the term in 38 C.F.R. § 3.354, which provides:

> An insane person is one who, while not mentally defective or constitutionally psychopathic, except when a psychosis has been engrafted upon such basic condition, exhibits, due to disease, a more or less prolonged deviation from his normal method

> of behavior; or who interferes with the peace of so-
> ciety; or who has so departed (become antisocial)
> from the accepted standards of the community to
> which by birth and education he belongs as to lack
> the adaptability to make further adjustment to the
> social customs of the community in which he re-
> sides.

38 C.F.R. § 3.354(a). VA's General Counsel has also issued "a wide-ranging precedential opinion" that interprets the regulation and is binding on the Board under 38 U.S.C. § 7104(c). *Bowling v. McDonough*, 38 F.4th 1051, 1054 (Fed. Cir. 2022) (citing Veterans Affairs Opinion of General Counsel Prec. 20-97, 1997 WL 34674474 (May 22, 1997) (*Veterans Affairs Opinion*)). The opinion, among other things, notes that 38 C.F.R. § 3.303(c) states that "a personality disorder is not a disease or injury for purposes of VA disability compensation" and that, "[b]ecause a personality disorder is not a disease for VA compensation purposes, behavior which is attributable to a personality disorder does not satisfy the definition of insanity in section 3.354(a)." *Veterans Affairs Opinion*, at *3; *see* 38 C.F.R. § 3.303(c) ("Congenital or developmental defects, refractive error of the eye, personality disorders and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation.").

B

Mr. Stanton presents four main arguments on appeal.

1

Mr. Stanton suggests that the "compelling circumstances" exception of § 3.12(c)(6) (based on § 5303(a)) applies to periods of AWOL of 180 days or less—like Mr. Stanton's periods of 7 and 59 days—and that he has established such compelling circumstances. Mr. Stanton's Br. at 4–5. The first part of that suggestion is a legal contention, but it is incorrect. Section 3.12(c)(6), by its plain language,

applies only to "an absence without official leave (AWOL) for a continuous period of at least 180 days." 38 C.F.R. § 3.12(c)(6). As the Veterans Court held long ago, the compelling-circumstances exception of that provision is not an exception to the 180-day precondition. *See Winter v. Principi*, 4 Vet. App. 29, 31–32 (1993).

The Veterans Court and VA viewed Mr. Stanton's discharge as falling within § 3.12(d)(4), concerning discharges for "[w]illful and persistent misconduct," excepting "discharge because of a minor offense . . . if service was otherwise honest, faithful and meritorious." 38 C.F.R. § 3.12(d)(4). But Mr. Stanton has not presented us with a question of legal interpretation concerning that provision. And fact findings or application of regulatory law to fact are not within our jurisdiction to review. *See Jefferson v. Principi*, 271 F.3d 1072, 1075 (Fed. Cir. 2001); *Waltzer v. Nicholson*, 447 F.3d 1378, 1380 (Fed. Cir. 2006).

2

Seeking relief under the "minor offense" exception of § 3.12(d)(4), Mr. Stanton contends that he presented enough evidence of mitigating circumstances that his offense should be considered a minor one. Mr. Stanton's Br. at 7. But Mr. Stanton does not point to a misinterpretation of the provision by the Veterans Court. Instead, he appears to contend that the record evidence demonstrates that his offense was minor—which raises only an issue of fact or of application of regulatory law to fact, over which we have no jurisdiction. *See Jefferson*, 271 F.3d at 1075; *Waltzer*, 447 F.3d at 1380.

3

Mr. Stanton contends that whether a person "know[s] or understand[s] the nature of his actions is a 'touchstone'" of the definition of insanity in 38 C.F.R. § 3.354(a). Mr. Stanton's Br. at 6. On that basis, he suggests that he presented evidence of his insanity such that he "should not

[have] been punished for his misconduct with an unde-sir[]able discharge." *Id.* at 6–7.

But Mr. Stanton has not shown an error of law. Section 3.354 contains several specific requirements, including that the former service member "exhibits, due to disease, a more or less prolonged deviation from his normal method of behavior," 38 C.F.R. § 3.354(a), and it has been clarified in various ways by a General Counsel opinion that binds the Board. *See Bowling*, 38 F.4th at 1054. Mr. Stanton has identified no error in interpretation that affects his case. And he does not challenge the validity of § 3.354 as a statutory implementation. To the extent Mr. Stanton contends that he nevertheless satisfied the requirements of § 3.354 when he went AWOL—by arguing, *e.g.*, that "erra[]tic thought patterns" meet the criteria for "psychiatric disease" which itself "meets the criteria for a disability," Mr. Stanton's Br. at 7—adjudicating such a contention requires applying regulatory law to fact, a task outside our jurisdiction. *See Jefferson*, 271 F.3d at 1075; *Waltzer*, 447 F.3d at 1380.

4

Mr. Stanton contends that the Veterans Court violated his "Right to Due Process" by denying his motion to file new evidence during the pendency of his appeal before the Veterans Court. Mr. Stanton's Br. at 2, 5–6. The Fifth Amendment provides a right to due process against the federal government, but we discern no constitutional violation in the Veterans Court's denial of Mr. Stanton's motion. The Veterans Court has jurisdiction only to review Board decisions "on the record of proceedings before the Secretary and the Board." 38 U.S.C. § 7252(b); *see also Kyhn v. Shinseki*, 716 F.3d 572, 578 (Fed. Cir. 2013). Mr. Stanton had ample opportunity to develop the factual record before VA and provided new evidence on several occasions throughout the claim adjudication process that VA considered. *See* SAppx. 57–58 (supplying school records); SAppx. 68–70 (supplying

the March 2016 report); SAppx. 76–78 (supplying the May 2018 report). We are aware of no authority suggesting that the familiar limit on an appellate tribunal's review of agency proceedings to the record developed before the agency constitutes a due process violation when there was adequate opportunity to develop the factual record before the agency.

### III

We have considered Mr. Stanton's remaining arguments and find them unpersuasive or to raise issues outside our jurisdiction. For the foregoing reasons, we affirm the Veterans Court's decision affirming the Board's post-remand denial of Mr. Stanton's claims for benefits.

The parties shall bear their own costs.

**AFFIRMED**