# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-8176

VIRGINIA T. MAYFIELD, APPELLANT,

v.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before MEREDITH, TOTH, and LAURER, *Judges*.

## O R D E R

TOTH, *Judge*, filed the opinion of the Court.

In *Breedlove v. Shinseki*, 24 Vet.App. 7, 20–21 (2010) (per curiam order), we concluded that we have the discretion to permit a movant to be substituted for an appellant who dies during the pendency of an appeal in this Court, provided that there is either a determination by VA or a concession by the Secretary that the movant is an eligible accrued-benefits claimant. Typically, the Secretary conditions his position regarding a substitution motion filed in this Court on how the regional office (RO) rules on a movant's parallel request for substitution filed with the Agency. As a consequence, the RO's ruling is usually dispositive on the factual question of a movant's status as an eligible—and thus proper—accrued-benefits claimant. *Breedlove* outlined some of the actions the Court may take when that status "legitimately is in dispute." *Id.* at 21.

In this case, we consider an issue that *Breedlove* did not explicitly address: Whether a movant dissatisfied with the RO's denial of a request for substitution may seek to have this Court directly review the propriety of the RO's ruling. We answer that question in the negative and reaffirm that the Court generally will not grant a motion for substitution unless the Agency determines that the movant is the appropriate party to step into the appellant's shoes. A would-be substitute dissatisfied with the RO's determination must challenge it through the administrative appeals process.

## I. BACKGROUND

### A. *Legal Landscape*

As a general rule in VA law, when a claimant dies, the "claim for benefits also terminates." *Crews v. McDonough*, 63 F.4th 37, 39 (Fed. Cir. 2023). But by statute, "certain successors acquire an interest in . . . benefits" that "were due and unpaid at the time of the [claimant's] death." *Phillips v. Shinseki*, 581 F.3d 1358, 1363 (Fed. Cir. 2009) (quotation marks omitted). Such "accrued benefits" are ones to which the claimant "was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death." 38 U.S.C. § 5121(a). For a very long time, an accrued-benefits claimant "could, with limited exceptions, pursue those claims only by

restarting from the beginning and filing a new accrued benefits claim." *Crews*, 63 F.4th at 39. In this process, as with all new VA claims, the initial adjudication of an accrued-benefits claim is undertaken by the agency of original jurisdiction, typically the RO. *Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed. Cir. 1996). And this adjudication includes determining whether the person pursuing accrued benefits is an appropriate claimant. That is because "[s]ection 5121 lists a number of potential accrued benefits claimants" and "delineates the order of preference in paying out such benefits." *Id.* at 1244, 1241. A person in a preferred category of claimant cannot forfeit or waive the right to request substitution in favor of a person in a lower category of claimant. 38 C.F.R. § 3.1010(g)(4) (2023). "Thus, the determination of whether a party qualifies as an accrued benefits claimant necessarily involves fact finding." *Zevalkink*, 102 F.3d at 1244.

But because this Court "is not a trier of fact and is not in a position to make such factual determination," we declined in *Zevalkink* to allow a surviving spouse, upon a veteran's death, to be substituted in his pending appeal here when her status as an accrued-benefits claimant had not been adjudicated by the Agency. *Id.* The Federal Circuit found no error in our decision to deny substitution, observing that a limited remand for an accrued-benefits eligibility determination was permissible but not "require[d]." *Id.* If the RO's determination regarding a person's status as an accrued-benefits claimant is adverse, "it can be appealed with a full record to the [Board] and to the courts." *Id.*

As noted above, some "limited exceptions" to this Court's general no-substitution rule later developed. *Crews*, 63 F.4th at 39. For example, *Padgett v. Nicholson*, 473 F.3d 1364, 1368–72 (Fed. Cir. 2007), held that substitution could be granted nunc pro tunc in this Court when a veteran died after the case was submitted but before our decision issued. Yet *Padgett* did not disturb the rule that this Court "had the authority" to grant substitution to an eligible accrued-benefits claimant, "*provided* that VA made the eligibility determination in the first instance." *Pekular v. Mansfield*, 21 Vet.App. 495, 501 (2007) (emphasis added) (citing *Zevalkink*, 102 F.3d at 1244).

Then, in 2008, Congress enacted 38 U.S.C. § 5121A. Veterans' Benefits Improvement Act of 2008 (VBIA), Pub. L. No. 110-389, § 212(a), 122 Stat. 4145, 4151. "[T]o remedy the inefficiencies and delays from restarting the process," this provision permits an accrued-benefits claimant to be substituted in the place of a deceased claimant. *Crews*, 63 F.4th at 39. It reads:

> If a claimant dies while a claim for any benefit under a law administered by the Secretary, or an appeal of a decision with respect to such a claim, is pending, a living person who would be eligible to receive accrued benefits due to the claimant under section 5121(a) of this title may, not later than one year after the date of the death of such claimant, file a request to be substituted as the claimant for the purposes of processing the claim to completion.

38 U.S.C. § 5121A(a)(1). VA has promulgated rules to implement section 5121A. Among other things, those rules provide that a request to substitute must be filed with the agency of original jurisdiction, that the would-be substitute must provide evidence of eligibility to do so—that is, evidence showing that the person is a qualified accrued-benefits claimant—and that a denial of a request to substitute is appealable to the Board. *See* 38 C.F.R. § 3.1010(b), (d), (e)(2).

2

In *Breedlove*, the surviving spouse of a veteran who died while his appeal was pending at the Court (but before briefing had begun) filed a motion to substitute under the auspices of section 5121A, and we had to determine whether the statute permitted substitution. Our analysis proceeded in two stages. First, we examined section 5121A's text, overall structure, and placement within title 38—as well as § 212(a)'s placement within the VBIA—to conclude that Congress intended the provision to apply only to administrative appeals before VA and not to judicial appeals before this Court. 24 Vet.App. at 10–14. Second, however, we reasoned that the legislation required reconsideration of our substitution caselaw and concluded that there was no longer a rationale "for foreclosing the opportunity for substitution on appeal at this Court based on the timing of the death of the [appellant]." *Id.* at 19. Accordingly, the Court spelled out the substitution procedure it would follow moving forward to eliminate the "potential 'zone of no substitution'" that would occur when a claimant dies after the issuance of a Board decision but before the submission of an appealed case to the Court. *Id.*

Initially, consistent with *Zevalkink* and *Pekular*, there must be a determination by the RO—or a concession from the Secretary—with regard to "whether a particular movant is an eligible accrued-benefits claimant."[1] *Id.* at 20. "This is a factual determination that . . . must be made by VA in the first instance" and "determined in accordance with section 5121." *Id.* at 20–21. To obtain this, the "Court may remand the question . . . , stay the appeal until a determination by VA is made, or direct the Secretary to inform the Court of his determination within a set period of time." *Id.* at 21. And "when accrued-benefits status is established by decision below or concession by the Secretary, standing is established." *Id.* Though substitution will generally be allowed in these circumstances, the Court retains the discretion to deny substitution based "on considerations of delay, unfairness, and inefficiency." *Id.* But if "no one seeks substitution or the person seeking substitution is not an eligible accrued-benefits claimant, then . . . vacatur [of the Board decision] and dismissal of the appeal would be the appropriate action." *Id.* Later decisions from this Court and the Federal Circuit have filled in details, but this is the basic judicial substitution scheme governing the present case.

## B. *Proceedings*

This case originates with veteran Jerry C. Mayfield. Following his death in July 2020, VA granted the request of his surviving spouse, Virginia T. Mayfield, to be substituted in his pending claim for special monthly (that is, non-service-connected) pension. She also filed two claims on her own behalf as his widow: dependency and indemnity compensation and death pension benefits. The Board denied all three claims in a November 2021 decision. The next month, Mrs. Mayfield filed a Notice of Appeal with the Court. While briefing was underway, however, counsel for Mrs. Mayfield informed the Court that she had passed away four months earlier in January 2022.

Counsel promptly filed a motion of behalf of Jacquelyn W. Covington, Mrs. Mayfield's granddaughter, to be substituted as the appellant here. Ms. Covington asserted that she is a proper substitute because—having paid $640 toward her grandmother's burial expenses—she qualifies as an accrued-benefits claimant. *See* 38 U.S.C. § 5121(a)(6) (permitting a person to claim accrued

---

[1] At oral argument, counsel for the Secretary said it is his understanding that, as a practical matter, the Secretary always conditions his position on a motion for substitution filed in this Court on the RO's accrued-benefits eligibility determination. Oral Argument at 31:32–32:02, https://www.youtube.com/watch?v=uEYPNJIk3w8.

benefits up to the amount "necessary to reimburse the person who bore the expense of last sickness and burial"). The Court stayed normal appellate proceedings and ordered the Secretary to respond to the motion. He advised that the RO had not yet reached a determination on the substitution request Ms. Covington had filed with VA and that, consequently, he wasn't yet able to take a position on her motion. The Court ordered him to file an additional update within 30 days.

At this point, substitution proceedings became increasingly fraught. On September 5, 2022, the Court received the first of several submissions from the movant. In this initial *Solze* notice, she informed the Court that her counsel had uncovered a VA letter stating that it had not received evidence that she incurred expenses related to Mrs. Mayfield's last sickness or burial. This letter, she maintained, reflected either oversight of the evidence she had submitted or erroneous rejection of that evidence. When the Secretary's next update reiterated the status quo, Ms. Covington filed an opposed motion for leave to submit a reply, essentially charging the RO with either incompetence or bad faith. On October 19, 2022, the Court issued an order holding the motion for leave in abeyance and instructing the Secretary within 30 days to have the Agency reach a determination on Ms. Covington's substitution request and to inform the Court of his position on the substitution motion pending here.

Unfortunately, matters did not resolve following the Court's order. A few weeks later, Ms. Covington filed a second *Solze* notice, in which she advised that the RO informed her, before it could rule on her substitution request, that she would have to file Form 21-601 ("Application for Accrued Amounts Due a Deceased Beneficiary") instead of Form 21-0847 ("Request for Substitution of Claimant"), which she had already filed. She believed that this requirement was legally erroneous. A week after that, she filed a third *Solze* notice pointing out what she considered additional VA missteps. Then the Secretary filed his response to the Court's October 19 order, the gist of which was that, because Ms. Covington hadn't filed the proper form, the RO couldn't rule on her substitution request; and because the RO hadn't ruled on her request, the Secretary wouldn't take a position on the substitution motion in this Court. The Secretary also observed that the statutory one-year deadline for seeking substitution (January 27, 2023) was approaching. This elicited another opposed motion from Ms. Covington for leave to file a reply.

Attempting to resolve this impasse, the Court issued another order in December 2022. The order reminded the Secretary that compliance with Court deadlines was not optional and instructed him within 30 days to have the RO rule on Ms. Covington's substitution request—whether on substantive or procedural grounds—and to inform the Court of his position on the substitution motion pending in this Court. The order also denied Ms. Covington's motion for leave and reminded her that, because "the burden for demonstrating qualification as an accrued-benefits claimant rests primarily with the person seeking substitution," it was her "responsibility, in consultation with counsel, to take appropriate action to best ensure the success of her substitution request pending before VA." Dec. 6, 2022, Order at 2.

Six days later, the Secretary informed the Court that the RO had denied Ms. Covington's request for substitution because she had not returned Form 21P-601 and that the RO had advised her of the right to seek higher-level or Board review of the denial. Given the RO's resolution, the Secretary opposed her motion to substitute filed here. The Court granted Ms. Covington's motions

4

to file a reply and for initial review by a panel to resolve the substitution motion in light of the parties' dispute.

## II. ANALYSIS

Although Ms. Covington seeks to litigate the propriety of the RO's denial of her substitution request, the central issue is whether the Court may directly review—and potentially reject—that RO determination when resolving a disputed substitution motion pending here. The answer is no.

This is apparent from *Breedlove* and the caselaw preceding it. That the RO might deny a request to substitute based on its resolution of the factual issue of eligibility was clearly foreseen by this Court. And if "the person seeking substitution is not an eligible accrued-benefits claimant," *Breedlove* concluded, then vacating the Board decision and dismissing the appeal "would be the appropriate action." *Breedlove*, 24 Vet.App. at 21. We never suggested that the RO's adverse ruling on a substitution request could be reviewed immediately in this Court. The reason for that omission is obvious. The Court's jurisdiction is confined to review of final Board decisions. 38 U.S.C. § 7266(a). The consequence of which is that the Court has "no authority to review RO adjudicative determinations" directly. *Hayre v. Principi*, 15 Vet.App. 48, 51 (2001), *aff'd*, 78 F. App'x 120 (Fed. Cir. 2003). As *Zevalkink* explained, before the advent of the current substitution regime, a person dissatisfied with the RO's adverse determination regarding her eligibility as an accrued-benefits claimant could appeal that determination to the Board and, if necessary, to this Court. 102 F.3d at 1244. *Breedlove* did not break with this established rule. We concluded that the enactment of section 5121A eliminated the underpinnings of the timing-based rule against substitution in this Court, but our decision did not short-circuit the administrative adjudication process.[2] Thus, it is clear from *Breedlove*'s reasoning that the Court may not directly review the RO's adverse substitution determination. That being so, the Court is not permitted to address the propriety of the RO's reasons for denying substitution at this time.

Ms. Covington seeks to avoid this conclusion, but her arguments are not persuasive.

She first argues that *Breedlove* should be "overturned"—or at least not regarded as binding—in light of (what she maintains are) its conflict with *Hayre v. Principi* and its own internal contradictions. Movant's Supp. Memo. of Law at 6–7. It goes without saying that, absent intervening higher authority, when a precedent of this Court is on point, a panel is bound to follow it. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992). No higher authority has disturbed *Breedlove*. So we may not "overturn" it. In any event, *Breedlove* is not in tension with other cases or itself.

*Hayre* concerned the Court's jurisdiction and our obligation to assure ourselves that we have it before taking action in a case. Ms. Covington seems to rely primarily on our statement that "[w]e cannot accept jurisdiction simply because the parties conceded it." *Hayre*, 15 Vet.App. at

---

[2] The Court has the discretion to stay its proceedings while the RO determines a would-be substitute's accrued-benefits eligibility. 24 Vet.App. at 21. Nothing in *Breedlove* prevents the Court, in the sound exercise of that discretion, from extending a stay in appropriate circumstances while a would-be substitute seeks redress before the Agency (such as an appeal of the RO's denial to the Board). Of course, the Court is not obliged to grant such relief simply because it is requested. In any event, Ms. Covington did not request a stay for appeal purposes in this case.

50. From this statement she appears to reason that, because the Court has an independent duty to ensure its jurisdiction, we are as entitled to dismiss a party's jurisdictional objections as we are to dismiss a party's jurisdictional concessions. In other words, she contends that the Court cannot reject jurisdiction here simply because the Secretary has not conceded that she is an eligible accrued-benefits claimant and thus has standing to pursue the appealed claims. Accordingly, she continues, the Court must conduct "a de novo review" of the RO's denial of substitution, a review that includes "the relevant factual determinations." Movant's Supp. Memo. of Law at 6.

The problem with this reasoning is that it invites the Court to exercise the duty to ensure our jurisdiction to act by violating other jurisdictional limitations placed upon us. "Congress vested [this] Court with limited jurisdiction, and even the weighty interests of judicial economy cannot enlarge that which a statute has directly limited." *Kyhn v. Shinseki*, 716 F.3d 572, 578 (Fed. Cir. 2013). In the appeals context, that "statutorily-granted jurisdiction" limits us to review of a "Board[ ] decision based upon the record before the Board." *Id.* The RO's adjudication of a person's status as an accrued-benefits claimant for purposes of permitting substitution is a factual determination appealable to the Board. *Zevalkink*, 102 F.3d at 1244; 38 C.F.R. § 3.1010(e)(2). Congress did not authorize this Court to review and settle a dispute over this fact-bound issue before the Board has made a decision on it. *Hayre* warned that the Court must be confident in its authority to act before doing so; that warning cannot be understood as a license to transgress statutory limits placed on such authority. *See* 15 Vet.App. at 56 (Kramer, C.J., concurring in part and dissenting in part as to dismissal) ("This Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress and may not be extended beyond that permitted by law."); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("The age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists has always worked injustice in particular cases."). In *Hayre*, our jurisdiction turned on whether a document constituted a valid Notice of Disagreement. 15 Vet.App. at 52. Because that is a legal question, *Phillips v. Brown*, 10 Vet.App. 25, 33–34 (1997), the Court could resolve it de novo without transgressing statutory limits. The same cannot be said of Ms. Covington's eligibility for substitution, which is a factual question committed to the RO for initial resolution.

Nor is there a contradiction between *Breedlove*'s statements that, on the one hand, the Court "must first obtain from the Secretary a determination as to whether a particular movant is an eligible accrued-benefits claimant" and, on the other, that "it remains within the Court's discretion to permit substitution." 24 Vet.App. at 20. A court exercises discretion not according "'to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) (quoting *United States v. Burr*, 25 F. Cas. 30, 35 (CC Va. 1807) (Marshall, C. J.)). So *Breedlove*'s reference to the Court's discretion must be read as cabined by the legal prerequisite that the Agency have found that "a particular movant is an eligible accrued-benefits claimant." 24 Vet.App. at 20. And that, in fact, is the most reasonable reading: Even when eligibility (and therefore standing) has been established, the Court may still decline to permit substitution based on relevant "considerations of delay, unfairness, and inefficiency." *Breedlove*, 24 Vet.App. at 21.

At oral argument, Ms. Covington took a novel position. She asserted that the portion of *Breedlove* reiterating the prohibition on the Court undertaking initial factfinding regarding a

6

would-be substitute's eligibility for accrued benefits was dictum. Although the Court is not obliged to consider such a belated assertion, *Overton v. Wilkie*, 30 Vet.App. 257, 265 (2018), we will address it here lest our silence be misconstrued. Dictum is language in an opinion that is unnecessary to the decision in a case and therefore nonbinding in future cases. *Williams v. Wilkie*, 32 Vet.App. 46, 55 n.5 (2019), *aff'd*, 828 F. App'x 721 (Fed. Cir. 2020). In contrast, an opinion's "holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment." Michael Abramowicz & Maxwell Stearns, *Defining Dicta*, 57 STAN. L. REV. 953, 1065 (2005). The limitation on the Court's authority to undertake initial factfinding regarding a would-be substitute's eligibility for accrued benefits was a critical component of this Court's reasoning on the way toward granting Mrs. Breedlove's motion for substitution, especially given our preliminary determination that section 5121A does not apply directly to this Court. We are not free to disregard this portion of *Breedlove*'s analysis.

Changing tack, Ms. Covington contends that *Breedlove* and its discussion of sections 5121 and 5121A are immaterial because Rule 43 of our Rules of Practice and Procedure gives the Court authority to grant substitution independent of any determination by VA regarding her eligibility for accrued benefits. That is not so. Rule 43 specifies: "If a party dies after a Notice of Appeal is filed or while a proceeding is pending in the Court, the personal representative of the deceased party's estate or any other appropriate person may, *to the extent permitted by law*, be substituted as a party on motion by such person." U.S. VET. APP. R. 43(a)(2) (emphasis added). "Rule 43 is simply a procedural mechanism for substitution" that—as the italicized language makes clear— "explicitly leaves the substantive standard for substitution to be filled in by other authorities." *Smith v. McDonough*, 35 Vet.App. 454, 463 (2022). Statutes and the caselaw interpreting them are those authorities. *See Merritt v. Wilkie*, 965 F.3d 1357, 1360 (Fed. Cir. 2020).

At bottom, Ms. Covington's arguments seem to stem from the view that a grant of substitution in this Court is an end unto itself that *Breedlove* mistakenly tied to substitution proceedings before the Agency. That view misunderstands not only the role substitution at the Court plays in the VA adjudicative process but also the relationship between substitution and the accrued-benefits claim. A claimant's entitlement to benefit payments ends on the last day of the month before the claimant's death. 38 U.S.C. § 5112(b)(1). As already noted, section 5121 permits certain survivors to seek unpaid benefits owed to the claimant at the time of her death. *See Crews*, 63 F.4th at 39. "[T]he enactment of section 5121A provided eligible survivors a faster, fairer, and more efficient way to process their accrued-benefits claims through substitution." *Reliford v. McDonald*, 27 Vet.App. 297, 303 (2015). But whether a survivor chooses to pursue substitution or a traditional accrued-benefits claim, the survivor's object is the same: accrued benefits—those benefits due and unpaid to a claimant at the time of her death. In other words, "both section 5121 and section 5121A provide separate and distinct procedural *paths* for pursuing accrued benefits." *Id.* at 302; *see* 38 U.S.C. § 5121A(a) (tying the right to request substitution to eligibility for accrued benefits under section 5121(a)). Substitution does not lead to a different kind of benefit.

Recognizing this connection between substitution and accrued benefits may help the dubious reader understand why *Breedlove* conditions a grant of substitution at the Court on the favorable resolution of a substitution request at the Agency. A would-be substitute, even for a claimant who dies while her case is pending here, will eventually have to be recognized as an

eligible accrued beneficiary by VA. After all, it is VA—not this Court—that will pay any accrued benefits ultimately granted. *Cf. Merritt*, 965 F.3d at 1360 (finding it unnecessary to settle the propriety of a surviving spouse's substitution when her failure to take appropriate steps with VA foreclosed recovery of accrued benefits). "Requiring the prospective substitute to provide evidence of eligibility to substitute is thus a reasonable measure to ensure that [VA] has the current and accurate information it needs to promptly process substitution requests" in accordance with the priority established in section 5121(a). *Nat'l Org. of Veterans Advocates, Inc. (NOVA) v. Sec'y of VA*, 809 F.3d 1359, 1363 (Fed. Cir. 2016). Evidence of eligibility must be presented to, and a request for substitution initially adjudicated by, the RO—including in cases where the claimant dies with a claim pending before the Board. *See* 38 C.F.R. § 3.1010(e). This requirement is reasonable, the Federal Circuit concluded, because "the Board is an appellate tribunal and is not well equipped to conduct the fact-gathering that may be necessary to determine eligibility for substitution," and because "there would be no appellate recourse for the claimant within [VA]" "[i]f the Board were to decide the substitution issue in the first instance." *NOVA*, 809 F.3d at 1364. These same concerns about appellate tribunals' competence to make fact-bound eligibility determinations and about shortchanging would-be substitutes on their appellate rights likewise counsel against a process that would task this Court with making initial substitution decisions. Both law and policy support *Breedlove*'s reasoning and the outcome here.

We have considered the movant's remaining arguments and find them unpersuasive. Whether the RO committed any error in its resolution of Ms. Covington's request to substitute is not an issue the Court may consider at present. To the extent that she wishes to challenge the RO's denial, her remedy lies in the administrative appeal process. Because she has not been determined to be an eligible accrued-benefits claimant, and thus not an eligible substitute in this case, vacatur of the Board's decision and dismissal of the appeal are the proper disposition. *See Breedlove*, 24 Vet.App. at 21.

### III. CONCLUSION

Accordingly, it is

ORDERED that the June 6, 2022, motion for substitution is denied. It is further

ORDERED that the November 24, 2021, Board decision is VACATED. It is further

ORDERED that this appeal is DISMISSED for lack of jurisdiction.

DATED: July 28, 2023